PORTO RICO COAL CO., Plaintiff and Appellant, *v.* JUAN G. GALLARDO, TREASURER OF PORTO RICO, Defendant and Appellee.

No. 4492.   Argued February 8, 1929.—Decided May 28, 1929.

*Hartzell, Kelly & Hartzell* and *R. O. Fernández* for the appellant.
*James R. Beverley, Attorney General, J. A. López Acosta* and
*R. A. Gómez* for the appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

The Porto Rico Coal Company, the plaintiff, brought an action in the District Court of San Juan against the Treasurer of Porto Rico, Juan G. Gallardo, and prayed for a judgment ordering the defendant to refund to the plaintiff the sum of $13,188.28 which had been collected unjustly from it as taxes and paid under protest. The defendant answered and moved that the complaint be dismissed.

The facts in the case are as follows:

On April 9, 1924, the Porto Rico Coal Company presented to the Treasurer of Porto Rico a report of its property holdings on January 15, 1924, subject to taxation. According to that report the Porto Rico Coal Company had an authorized capital of $750,000 in stock of $100 per share, of which 5,000 shares had been issued with a value of $500,000. It had real and personal property, a surplus and a sinking fund, and among the property were Liberty bonds and United States Treasury notes of the value of $218,058.75 and bills receivable and personal credits for $231,726.92, making a total of real and personal property amounting to $712,894.97. The Treasurer of Porto Rico assessed the property at $937,630 for the purpose of taxation and so notified the said corporation. In the assessment made by the Treasurer no exemption was allowed for the following:

(*a*) Liberty Bonds and United States Treasury notes to the value of $218,058.75.

(*b*) Expenses incurred in dredging, filling and building a dock on land leased from The People of Porto Rico to the amount of $67,098.58.

(*c*) Bills receivable and personal credits to the amount of $231,726.92.

The Porto Rico Coal Company appealed to the Board of Review and Equalization, which denied the petition and left

in force the assessment made by the Treasurer who levied on the said company as taxes for the fiscal year 1924–1925 the sum of $19,596.48. The appellant paid that sum, but gave notice that $13,188.28 of it was being paid under protest, contending that it was liable for taxes in 1924–1925 on a capital of only $306,611.93. On that basis it filed its complaint which the Treasurer answered by maintaining that the assessment was in conformity with the law. After a trial the court rendered judgment for the plaintiff in the sum of $5,959.76 and ordered its refund with interest. In the opinion accompanying the judgment it was held that the sum of $218,058.75, the value of the Liberty bonds and United States Treasury notes, and that of $67,098.58 expended in improvements on the land leased from The People of Porto Rico are exempt from taxation.

From that judgment of September 6, 1927, The Porto Rico Coal Company took the present appeal.

Four errors are assigned by the appellant, of which the first two are as follows:

"1. The district court erred in not holding that the assessment made by the Treasurer of Porto Rico on the basis of $937,630.00 as the total capital in stock and surplus of the plaintiff is arbitrary and illegal.

"2. The district court erred in holding that it was not shown by a preponderance of the evidence that the true assessment of the property of the plaintiff was that submitted by the plaintiff in its report."

They are argued as one because in reality they are the same question viewed in two different ways.

The Treasurer took as a basis for the assessment the capital (stock, bonds, surplus, etc.). The stock was valued at $500,000 and the remainder at $437,630.

It is alleged by the appellant that "surplus" must be understood as being "a reserve fund gradually accumulated by a corporation to meet any unforeseen contingency." It is observed by the appellee that this theory is not sustained by

law or by jurisprudence. In this the appellee is right. That theory is not supported by law, by jurisprudence or by any principle of justice. The theory of the court in its well-considered opinion is more logical and legal, giving that name to property in excess of the par value of the stock. That definition should be given full approval and force.

We can not agree with the appellant in the extreme effectivity which he wants to give to the declaration of the taxpayer so that, as it seems, the Treasurer is thereby forced to accept the declaration or to present detailed and strong evidence that the valuation made by the taxpayer is not legal or just. It is true that an arbitrary and whimsical assessment by the Treasurer can not in justice be upheld; but the same rule is applicable to a similar one made by the taxpayer. As a matter of fact the latter is inclined to defend himself and this may lead him into error in making a valuation without meaning to defraud the treasury, but believing that his holdings have depreciated and consequently acting on such belief.

The Treasurer was not bound to accept as indisputable the sum of $754,921.51 appearing from the report of the plaintiff. The assessor may fix another sum based on other data and even on his own information. That is what he did in this case and it having been taken to the Board of Review and Equalization before which evidence could be produced, the board affirmed the action of the Treasurer. It seems that if the plaintiff believed that the Treasurer was mistaken, proof of such mistake should have been offered by the plaintiff.

In *Gibson* v. *Clark,* 131 Iowa, 325, 108 N. W. 527, cited by the appellant, there was in question an alleged omission of property belonging to W. F. Clark and not a discrepancy in the valuation or assessment of the property. In any case, the scope of the decision is not so broad as the appellant seems to assume. Even if such was the case we should not feel bound to follow it unless its reasoning were very convincing. Of course, the surmise or conjecture that property has

been omitted is not sufficient to overcome certain presumptions; but this is not the contention of the appellant for it goes much farther.

The jurisprudence cited by the appellee supports the theory that without detracting from the declaration of the taxpayer it can not be considered as binding on the assessor in such manner as to bar him from amending the assessment on other grounds. As said in *Bowman* v. *Montcalm,* 89 N. W. 334, "If the statement contains valuations of the items of property mentioned in it, such estimates are not conclusive upon the assessor. If they were, the taxpayer, and not the assessor, would assess the property, practically."

On the other hand, a theory contrary to that of the appellant is well founded. In *Great Northern Railway Co.* v. *Okanogan County,* 223 Fed. Rep. 198, it was said:

"In an action to recover the amount of a tax paid under protest on the ground that the assessment was excessive, the burden was on plaintiff to show that the tax was oppressive and illegal, and where its evidence was uncertain and inconclusive, and did not satisfy the court as to the actual value of the property, or that the assessment as made was so excessive as to give rise to an implication of fraud or mala fides, plaintiff could not recover."

In *Washington Union Coal Co.* v. *Thurston County,* 2 Am. Law Rep. 1546, it was held:

"As to the reasonableness of valuations placed on property for, the purpose of taxation, the well-established rule favors and supports the county assessor and board of equalization, and one who challenges such valuations assumes a task not measured or accomplished with less than clear and convincing proof. . . . . .

"In the present case we find, in addition to the presumption in favor of the assessments, active examination and investigation by and knowledge on the part of the assessor, together with due consideration by the board of equalization, to support the assessment and taxes complained of. To overcome this presumption of fairness of the assessment, appellant furnished, in effect, the testimony of its superintendent . . . . . . and the testimony of appellant's mining engineer . . . . . Such proof is not sufficient to overcome the pre-

sumption in favor of the assessment upon which rest the taxes sought to be avoided.''

We notice that in certain cases great importance has been given to the decisions of boards of review and equalization which, in *Kimball* v. *School District*, 63 Pac. 213, are clothed with a quasi-judicial capacity for making assessments, and it has been held that courts can not become assessors for the purpose of taxation and should intervene only where conclusive evidence of fraud is submitted.

In the present case the district court did not give to the plaintiff's evidence the weight attached to it by the plaintiff. The court acted properly, since that evidence is not convincing about the true assessment.

In our jurisdiction there was a case similar to this case, viz., *Saurí & Subirá* v. *Treasurer*, 26 P.R.R. 543. Saurí & Subirá were the owners of a sugar factory and for the purpose of taxation for 1915–1916 they valued the property at $32,470. The Treasurer assessed the same property at $153,280 and Saurí & Subirá appealed to the Board of Review which confirmed the assessment of the Treasurer, whereupon they paid under protest, and filed their complaint which was finally dismissed. Evidence was introduced in the district court by both parties. The Supreme Court cited the case of *The Ensenada Estates Inc.* v. *Hill*, 24 P.R.R. 462, and held that appellants Saurí & Subirá had not shown at the trial that the taxes paid under protest are so manifestly excessive as to work a real and unequivocal hardship equivalent to a clear and substantial injustice entitling the plaintiffs to relief by virtue of the action brought.

In the case under consideration the district court did not find the elements of proof so convincing for the judge so as to render a decision for the plaintiff. The action of the court was proper and wise.

The third assignment of error is as follows:

"The district court erred in not holding exempt from taxation the item of bills receivable and other personal credits of the plaintiff."

All property not expressly exempted from taxation should be assessed as taxable under section 290 of the Political Code. The exemptions are stated in detail in section 291 of that Code.

The parties cite cases decided by this court.

In *Union Central Life Insurance Co.* v. *Gromer,* 19 P.R.R. 856, the principal question discussed and determined was the situs of the debt and the authority or jurisdiction to assess and tax certain credits secured by mortgage on property in Porto Rico but belonging to a corporation domiciled in Ohio.. In that case the court said:

"Not only does such an intention fail to appear in any legislation by The People of Porto Rico, but in section 290 of the Political Code, as amended, personal credits are specifically exempted. Hon. Foster V. Brown, Attorney General of Porto Rico, says:

" ' . . . . when the Legislature in 1904 amended said section by providing that personal property shall not include book credits, promissory notes, nor other personal credits, it was the intention of the Legislature to exempt these classes of property from taxation, otherwise the amendment to the section would have been meaningless.' 3 Opinions of the Attorney General of Porto Rico, 332.

"The capital attempted to be taxed in this case being personal credits in the hands of the insurance company has not been made subject to taxation by the Legislature of Porto Rico, and the fact that it is secured by a mortgage, as we have seen, can make no difference, the Legislature having exhibited no intention to tax it as such. These considerations might dispose of the case, but in order to make our views clear in regard to the matter we will proceed to some further discussion."

In *Fajardo Sugar Co.* v. *Treasurer of Porto Rico,* 22 P. R.R. 290, this court expressed itself as follows:

"The appellant, in spite of the case of the *Union Central Life Insurance Company* v. *Gromer, supra,* insists that the credits are not exempted by the law. He maintains that the Attorney General of Porto Rico, Mr. Brown, and this court in following his opinion

were mistaken. The argument is that section 290 merely says that credits should be exempted from their classification under the head of personal property, but that credits are nevertheless taxable because section 290 provides that all property shall be taxed. The appellant points out that by the law of 1902 credits were also taxed and that the only revision that the law of 1904 made was to exclude them from their classification under personal property.

"It is a very general and convenient division of property into real and personal. Sometimes credits or choses in action were not considered to be included under personal property, and execution or judicial process against personal property did not run against credits. The mere fact that the Legislature indicates an intention to tax all property does not make every possible form or mutation of property taxable, and some things or claims of value are frequently not considered as property until the Legislature declares them to be so. *Tally, County Treasurer,* v. *Brown,* 125 M. V. 248; *State of Washington ex rel. J. G. Wolf* v. *Parmenter,* 19 L. R. A. (N. S.) 707, citing *People* v. *Hibernia Sav. & L. Soc.,* 51 Cal. 243, where it was held that credits were not necessarily property under constitutional provision requiring all property to be taxed. See also *Gleason* v. *Thaw,* decision of the Supreme Court of the United States, February 23, 1915. Generally, however,—and it has been so held by the courts,—personal property would include credits, and when section 290 specifically excludes such credits we must take it for granted that the Legislature intended what it said. The Legislature, seeing that all physical property is taxed, may have desired to avoid a taxation of claims on that property to avoid duplicate taxation which so frequently falls on the borrower himself instead of on the person holding the credit. The case of the *Union Life Insurance Company* v. *Gromer* has never been overruled and does not depend solely on the opinion of Attorney General Brown, but on a reasoned consideration of the statute. Following this same line of argument, the appellant insists that exemptions should be strictly construed, but the cases in which this principle is announced are more generally clear immunities, *e. g.,* particular individuals, corporations, boards, or charitable organizations, or property exempted to individuals. *Vicksburg, etc. R. R. Co.* v. *Dennis,* 116 U. S. 665; *Providence Bank* v. *Billings,* 4 Pet. 514; 37 Cyc. 908 *et seq.*"

And in the same opinion:

"But whether the exclusion of credits in section 290 be considered

as an exemption or an exception to taxation, the intention of the Legislature as revealed by that section is not to be mistaken. The intention to exclude is further displayed by the changes made in 1904 in other parts of the Political Code. In sections 317 and 319 of that code, requiring corporations to make returns of their personal property, the word 'credits' was included in 1902 and omitted in 1904, the date at which section 290 was amended. And section 290 itself says that for the purposes of taxation real property should include certain things and personal property certain others (excluding credits), thus showing an exhaustive division of property taxed.''

In *Porto Rican & American Insurance Co.* v. *Gallardo*, 37 P.R.R. 108, on reconsideration it was held as follows:

''We agree with the government that the $11,850 in shares of corporations were not shown to be exempt. Section 291 (*d*) of the Political Code exempts shares of other corporations when the property of such corporations is exempt or when the shares are taxable to said corporations. The appellant did not show at the time that its shares of stock were exempt in either way.

''Similarly as to mortgage credits under section 291 (*m*), as follows:

'' 'Non-interest bearing mortgage bonds and other obligations used exclusively as guarantees or securities for the proper performance of official duties; liens and censos the interest on which does not exceed five per cent per annum, provided the same are specially devoted to carry out testamentary will applying them to charitable or educational purposes. But all property hereby exempted from assessment, in so far as it is real property, shall be duly listed, valued and described as is other property; and the Treasurer shall keep a record showing for each piece of real property so exempted its description and estimated value, and by whom it is owned, the reason for its exemption from taxation, and such other information as the Treasurer may deem desirable.'

.. ''The plaintiff does not convince us that it falls under any of these classes. Thus $16,000 of mortgage property are not exempt.''

The appellant contends that according to the evidence among the credits making up the item of $231,726.92 were included stock certificates of Central Carmen and Central Coloso and that it appears from the testimony of witness Beck

that they were taken to cover certain credits against those corporations and therefore should be considered as bills receivable. This is an erroneous theory, since those certificates can never be taken as a credit for the reason indicated, but really as property.

But the plaintiff's evidence did not convince the district court that the shares or certificates and the other credits were exempt from taxation. We would not feel justified, after an examination of the evidence, in reversing the conclusions of the trial court.

The fourth assignment is that the court erred in not imposing the costs upon the defendant.

There is no reason for holding that the defendant acted with temerity and the discretion of the court was exercised prudently in the present case.

For the foregoing reasons the judgment appealed from must be affirmed.