## Torian, et al. v. Caldwell, et al.

(Decided December 21, 1917).

## Appeal from McCracken Circuit Court.

1. Bills and Notes—Pleas of Non Est Factum—Evidence—Sufficiency.—In an action on a promissory note, evidence on a plea of non est factum examined and held to make a question for the jury.

2. Bills and Notes—Consideration—Evidence—Question for the Jury.—In an action on a promissory note, evidence that the note was executed without consideration, held to make a question for the jury.

3. Bills and Notes—Actions—Pleadings—Consideration—Necessity of Alleging and Proving.—Under our statute and decisions, a promissory note imports a consideration and it is not necessary for the holder in declaring on such a note, either to allege or prove the consideration.

4. Bills and Notes—Actions—Proof—Consideration—Necessity.—If in an action on a promissory note which imports a consideration, the pleader unnecessarily alleges the consideration, it must be proved.

5. Bills and Notes—Actions—Want of Consideration—Burden of Proof—Effect of Exhibit.—In an action on a promissory note, the mere filing of the note which recited the consideration for which it was given, did not have the effect of placing on the holder the burden of proving the consideration.

6. Bills and Notes—Actions—Consideration—Instruction.—In an action on a promissory note, an instruction apparently placing the burden of proving the consideration on the holder, held not prejudicial.

7. Witnesses—Bills and Notes—Transaction With Decedent—Competency of Payee and Assignor.—The payee and assignor of a note is not rendered competent to testify that he was present and saw the decedent sign the note, by the fact that the decedent's executrix and devisee testified that the signature on the note was not in the handwriting of the decedent; her evidence being the mere expression of an opinion and not relating to the transaction concerning which the payee and assignor offered to testify.

BRADSHAW, NICHOLS & McDONALD, and J. D. SPEIGHT for appellants.

HUSBANDS & HUSBANDS, JOHN K. HENDRICK and WILLIAM HUSBANDS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Ina F. Torian and her husband, T. H. Torain, brought this suit against Addie Caldwell, individually and as ex-

ecutrix of her husband, Samuel B. Caldwell, Jr., deceased, and others, to settle the estate of Samuel B. Caldwell, Jr., and to recover on the following note:

"$10,000.                                  Paducah, Ky.,
                                    Friday, March 10, 1905.

"On or one day after my death, I do hereby promise to pay to T. H. Torian the sum of Ten Thousand Dollars and I also do hereby authorize my executor to pay the above sum to T. H. Torian on the above date mentioned herein for his valuable services rendered in procuring valuable evidence for me to this amount in the law suit between myself and the Lang Bros., and for many other valuable deeds that T. H. Torian has done for me that he has never been paid for, this note bearing interest from this date at the rate of six per cent. until paid.

                    (Signed)    "S. B. CALDWELL, JR.
"Witnesses,
    "G. T. A. Gilberto,
    "J. E. Torian."

By endorsement dated May 5th, 1906, the payee, T. H. Torian, assigned the note to his wife.

The defendants pleaded *non est factum* and no consideration. A trial before a jury resulted in a verdict and judgment for defendants, and plaintiffs appeal.

It will be observed that the note in question appears to have been executed on March 10, 1905. Samuel B. Caldwell, Jr., died on June 14, 1916, after a severe illness covering a period of about three years. He was possessed of a large estate which he devised to his wife with certain provisions for the benefit of his four infant children. At the time of his death the testator was indebted to certain Paducah banks in the sum of about $30,000.00. When suit was brought, the note had been running for over eleven years, with interest at the rate of 6 per cent. per annum, and the principal and interest amounted to about $17,000.00.

On the question of genuineness of the payor's signature, the defendant introduced a number of witnesses. Mrs. Caldwell, widow of the decedent, and Mr. and Mrs. Mallory, his brother-in-law and sister, testified in substance that the decedent wrote a free running hand, while the signature on the note was in a cramped and labored hand, and gave it as their opinion that the signature was not in the handwriting of the decedent. In addition to this testimony, about fifty checks containing

the genuine signature of the decedent were introduced in evidence. Several bank officers and others, who were either acquainted with the signature of the decedent or qualified as experts, stated emphatically that the signature on the note was not genuine. There was further proof to the effect that the signature of G. T. A. Gilberto was not genuine, and a card containing his genuine signature was introduced in evidence. On the contrary, J. E. Torian, one of the witnesses to the note, and a brother of the payee, testified that he was present and saw Samuel B. Caldwell, Jr., sign the note. Two real estate agents compared the signature on the note with the signatures on the checks and pronounced the former to be genuine. Arthur Pryor testified that Samuel B. Caldwell, Jr., told him that he owed Tom Torian a note. T. J. Murphy also testified that Caldwell told him that Torian had his note for a considerable amount. Another witness, who claimed to be acquainted with the handwriting of Gilberto, gave it as his opinion that Gilberto's signature on the note was genuine. In view of the positive evidence of J. E. Torian that he saw the decedent sign the note and decedent's statement to two witnesses that he owed the payee a note, and of the further fact that certain witnesses for the defendant admitted a similarity between the signature in question and the signatures on the various checks introduced in evidence, it is insisted that the finding of the jury that the signature of the payor was not genuine, is flagrantly against the evidence. In our opinion this contention cannot be sustained. On the question of genuineness the jury had not only the benefit of the testimony of those who were acquainted with the handwriting of the payor, and of others who were experts on the question of handwriting, but also the opportunity of examining and comparing the signature in question with the genuine signatures of the payor on the numerous checks before them and thus reaching an independent conclusion in the matter.

On the question of no consideration, it is contended that the evidence was not sufficient to take the case to the jury and that the instructions were not in proper form. On this question J. G. Husbands, who was decedent's partner and attorney for a number of years, and who conducted the law suit of Caldwell v. Lang, testified that T. H. Torian never had anything to do with procuring, or assisting in procuring, any evidence in that case and that he never knew of the existence of such a

man as T. H. Torian until after the case was tried and judgment rendered. On being asked on cross-examination, if decedent did not bring Tom Torian to the house of witness and there read the deposition of Waddie Land, witness replied that no such thing ever happened. The only other evidence bearing on the question of consideration is that of J. E. Torian, one of the alleged witnesses to the note. After stating that the transaction took place in Don Gilberto's saloon, commonly called "The Home of the Willow Spring," or "The Hole in the Wall," and that the note was signed by Caldwell and Gilberto in his presence, he testifies as follows: On several occasions just before the execution of the note, he heard Sam Caldwell, Gilberto and his brother Tom discussing the matter. The home place of Judge Lang was to be sold and Caldwell stated that he was going to have the place if it cost him $6,000.00. Caldwell wanted to know what Judge Lang was going to give for it and told Tom that if he had it, he would give him $10,000.00 to find out for him. Tom agreed to find out for the sum of $10,000.00. Gilberto said, "I can draw up a note to that effect and if you have not the money, I can draw it up and make it payable one day after death." Thereupon Sam said, "All right, I don't give a damn, I don't have to pay it until after I am dead." Gilberto then said, "It won't hurt you anyway." Afterwards he heard Tom talking to Waddie Lang and Waddie said he would give $4,200.00 or $4.700.00 for the property. Whether this information was ever imparted to Caldwell by Tom, witness did not know. The note was not drawn up by Gilberto at the time of the above conversation, but was in the handwriting of his brother Tom. It is argued for the plaintiffs that the evidence of Mr. Husbands, was not sufficient to show that Tom did not perform valuable services in procuring evidence in the Lang case, because the services may have been performed without the knowledge of Mr. Husbands, and that even if Husbands' testimony be regarded as sufficient on this point, it was not sufficient to show that the other "valuable deeds" were not performed. As a matter of fact, however, we have not only the statement of Husbands, who was the attorney in the case, that no such services were performed by Tom Torian, but the testimony of J. E. Torian that the note for $10,000.00 was given to Tom Torian as compensation for his services in finding out what Lang would give for property for which Caldwell was willing to pay only the sum of $6,000.00. While ordinarily proof of the failure of part of the consideration

will not affect the remainder of the consideration, yet where there is substantial evidence that the recital of part of the consideration is false and the circumstances detailed by the only witness, who claims to know what the note was given for, are so unusual and improbable as to discredit the entire transaction, such evidence, we think, was sufficient to make the question of want of consideration one for the jury.

The instructions are as follows:

"1. If you shall believe from the evidence in this case that S. B. Caldwell signed his name to the note sued on and read to you in evidence, and that said note was signed by him and delivered to the plaintiff, T. H. Torian, in consideration of services rendered by said Torian to said Caldwell, as stated therein, then the law is for the plaintiff and you will so find.

"2. But unless you shall believe from the evidence that said S. B. Caldwell signed his name to said note sued on and delivered same to T. H. Torian, and in consideration of services rendered by said Torian to said Caldwell, as stated in said note, then the law is for the defendant and you will so find."

It is insisted that the instructions are erroneous, because they are so framed as to impose on plaintiffs the burden of proving the consideration. In this connection it is insisted that the trial court should have told the jury in substance that if they believed from the evidence that S. B. Caldwell signed the note sued on, they should find for plaintiffs, unless they further believed from the evidence that the note was given without consideration. It may be conceded that under our statute and decisions, the note in question imported a consideration and it was not necessary for plaintiffs either to allege or prove the consideration. The only exception to this rule is that if one declaring on an instrument importing a consideration unnecessarily sets out the consideration, he must prove it. Bronston's Admr. v. Lakes, 135 Ky. 173, 121 S. W. 1021. Here plaintiffs did not set out the consideration, but merely alleged the maker's promise and failure to pay. True, they filed the note as an exhibit which recited the consideration for which it was given, but its filing only had the effect of preventing plaintiffs from pleading contrary to its terms and did not impose upon them the burden of proving the recited consideration. This being true, the instructions would have been in better form had they been framed in conformity with the suggestion of counsel for plaintiffs, but after all the

difference between the given and suggested instructions is more technical than substantial. Indeed, instructions similar to those given have been approved by this court. Smith v. Doherty, 109 Ky. 616, 22 Ky. Law Rep. 1238, and we do not regard the form of the given instructions as prejudicial error under the facts developed by this record.

Lastly, it is insisted that the court erred in refusing to permit T. H. Torian, the payee in the note, to testify that he saw Caldwell sign the note, and that the signature thereon was his signature. It is argued that the witness was competent to testify on this question, because Mrs. Caldwell, who was her husband's executrix and devisee, had first testified that the signature was not that of her husband.

Section 606, subsection 2, provides in part as follows:

"2. Subject to the provisions of subsection 7 of this section, no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by, an infant under fourteen years of age, or by one who is of unsound mind or dead when the testimony is offered to be given except for the purpose, and to the extent, of affecting one who is living, and who, when over fourteen years of age and of sound mind, heard such statement, or was present when such transaction took place, or when such act was done or omitted, unless . . . the decedent, or a representative of, or some one interested in, his estate, shall have testified against such person, with reference thereto."

Subsection 7 also provides:

"7. The assignment of a claim by a person who is incompetent to testify for himself shall not make him competent to testify for another."

Here Mrs. Caldwell, though interested in her husband's estate, did not claim to be present when the note was signed or give any testimony in reference to that transaction. After qualifying herself to give opinion evidence on the question, she merely stated that the signature on the note was not that of her husband. T. H. Torian did not qualify himself to give expert evidence on the subject of the signature, but was offered as a witness for the sole purpose of showing that he was present and saw Caldwell sign the note. Since Mrs. Caldwell had not testified as to that transaction, it follows that he was not competent to testify in reference thereto.

Judgment affirmed.