## Mutual Oil Refining Company v. Clay, et al.

(Decided December 19, 1924.)

### Appeal from Clark Circuit Court.

1. Appeal and Error—Objections Not Made at Trial Waived.—Objections that answer was not verified nor genuineness of acceptance denied by affidavit as required by Civil Code of Practice, section 527 (Kentucky Statutes, section 473), not made below were waived.

2. Bills and Notes—Burden of Proving Execution of Corporate Acceptance Held on Plaintiffs.—In action against corporation on acceptance of order to pay money under contract, answer denying

allegation of petition that amount of acceptance was due under contract, and interposing plea of non est factum placed burden of proof on plaintiffs under Civil Code of Practice, sections 525, 526.

3. Corporations—President has no Inherent Power to Sign Negotiable Paper.—President has no inherent power to sign negotiable paper, but he may do so when charter and by-laws indicate pur-pose to repose such power in him.

4. Corporations—Under By-laws, President Held Not Authorized to Sign Acceptance Without Directors' Authorization.—Under by-laws providing that control of corporation should be in board of directors, with power to delegate authority to sign negotiable papers, and that president should be chief executive officer, held that president was not authorized to sign acceptance of order by contractor unless authorized by directors.

JAMES PARK and M. C. REDWINE for appellant.

J. SMITH HAYS, HAYS & HAYS and RODNEY HAGGARD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Reversing.

This action was commenced in the Clark circuit court by Clay and Neal upon the following acceptance:

"Lexington, Ky., June 23, 1923.

"Mr. C. L. Bell, President,
Mutual Oil and Refining Co.,
301 Security Trust Bldg.,
Lexington, Ky.

"Dear Sir:

"In accordance with the contract between the Mutual Oil and Refining Company and the Arco Construction Company dated May 5th, 1920, you will please pay to the bearer of this note on July 10, two thousand five hundred dollars; said money to be charged to our account the same as if it had been paid to us direct.

"Very truly yours,
"Arco Refinery Construction Co.,
By F. P. THOMPSON, Pres.

"We accept the above order for two thousand five hundred dollars ($2,500.00), and agree to pay same to the bearer of this note on July 10; same to be charged to the Arco Construction Company.

"Mutual Oil and Refining Co., Inc.,
By C. L. BELL, President."

Answering the appellant company pleaded by way of avoidance that the order bearing date June 2, 1920, and addressed to the appellant company for the sum of $2,500.00 was not accepted by it nor by any one authorized to act for it or on its behalf in incurring such liability; that the said acceptance was made, executed, signed and delivered to the said F. P. Thompson by C. L. Bell without the knowledge, consent or assent of the defendant, Mutual Oil and Refining Company, and without any legal authority conferred upon him by the board of directors of said company to so indorse said written acceptance for payment on said order, and without any sort of authority whatever to do so; therefore, it avers that the said written acceptance was not, and is not its act and deed, and the same had no binding effect on it, and same is not, and was not, its binding obligation, or any obligation against it, and it avers that said written acceptance indorsed on said order by C. L. Bell was and is *ultra vires,* illegal and void as against it. "The answer was not verified nor was the genuineness of the acceptance" denied by affidavit as provided by section 527 of our Civil Code, and section 473, Kentucky Statutes, but as these questions were not raised below they must be treated as waived. Myers v. Douglass, 99 Ky. 267.

Issue being joined the parties announced ready for trial and a jury was impaneled; thereupon the court directed defendant, now appellant, to assume the burden of proof, to which it objected, and that is now one of its principal grounds of complaint. At the conclusion of the evidence for the defendant, now appellant, the appellees, then plaintiffs, moved for a directed verdict in their favor, and this motion was sustained, and of this appellant complains.

The plaintiffs below, appellees here, should have been required to assume the burden of proof. Appellant's plea was in effect one of *non est factum.* In fixing the burden of proof the test is, for whom would the court have pronounced judgment had no evidence been introduced? Sections 525 and 526, Civil Code. The petition alleged as consideration for the acceptance of the order in suit that the oil company was indebted to the Arco Company, under its contract, in the sum of $2,500.00. This was denied by defendant company, which made an issue, with the burden upon the plaintiff to show that the money was due under the contract. Without such proof judg-

ment would have gone for the defendant company. In the case of Torian v. Caldwell, 178 Ky. 509, we said:

> "It may be conceded that under our statutes and decisions, the note in question imported a consideration and it was not necessary for plaintiffs either to allege or prove the consideration. The only exception to this rule is that *if one declaring on an instrument importing a consideration, unnecessarily set out the consideration, he must prove it.* Bronston's Admr. v. Lakes, 135 Ky. 173."

It is a general rule that the president of a corporation has no inherent power as such officer to sign negotiable paper, or to make acceptance of such obligations on behalf of his company, but he may do so where the charter provisions and the by-laws of the corporation are sufficiently broad and definite as to indicate a purpose on the part of the board to repose such power and authority in him.

> "As a general rule the president of a corporation has, merely by virtue of his office, no more authority than any other director to act for the corporation and to bind it in dealings with third persons," says 14A C. J., page 356, "but his powers as agent must come from the organic law of the corporation or form a delegation of authority from it, either directly or through the board of directors, formally and directly granted or implied from its habit or custom of doing business, and as in the case of other agents, he may acquire larger powers than those ordinarily belonging to him by being held out to the public as possessing them, and being suffered by the directors habitually to exercise such powers in the face of the public. Where he acts within the scope of his authority, his acts are the acts of the corporation; but he cannot bind the corporation by acts not within the scope of his authority although they may relate to the company's business, as where he acts in matters which are within the exclusive province of the board of directors." 14A C. J. 356, 357.

It is provided by the fourth (4th) section of the by-laws, of the corporation:

> "Sec. 4. The property and business of the company shall be managed and controlled by a board of not less than three nor more than seven directors."

The fifth (5th) section reads:

"The board of directors shall have the management of the business of the company, and in addition to the powers and authorities of these by-laws expressly conferred upon them, may exercise all such powers and do all such acts and things as may be exercised or done by the corporation but subject, nevertheless, to the provisions of the statute, of the charter, and of these by-laws, and to any regulations from time to time made by the stockholders, provided that no regulation so made shall invalidate any prior act of the directors which would have been valid if such regulation had not been made.

"At their discretion to pay for any property or rights acquired by the company, either wholly or partially, in mony or in stock, bonds, debentures, or other securities of the company.

"To confer, by resolution, upon any officer of the company the right to choose, remove or suspend such subordinate officers, agents or factors.

"To determine who shall be authorized to sign on the company's behalf, bills, receipts, acceptances, endorsements, checks, releases, contracts and documents.

"From time to time provide for the management of the affairs of the company at home or abroad in such manner as they think fit, and in particular from time to time to delegate any of the powers of the board of directors to any committee, officer or agent, and to appoint any persons to be agents of the company with such powers including the power to subdelegate and upon such terms as may be thought fit."

The twelfth section of the by-laws of appellant corporation provides in part that "the president shall be the chief executive officer of the company, . . . he shall have general and active management of the business of the company; shall see that all orders and resolutions of the board are carried into effect; shall execute all contracts and agreements authorized by the board. . . . He shall have general supervision and direction of all the other officials of the company and see that their duties are properly performed; . . . he shall be *ex-officio* a member of all standing committees, and shall have general powers and duties of supervision and man-

agement usually vested in the office of the president of a corporation.''

Section 21 provides:

"All checks, drafts, or orders for the payment of money shall be signed by the treasurer and countersigned by the president or vice president or such other officer as the directors may delegate."

The corporation had entered into a written contract by which it was to construct an oil refinery to be provided with all the machinery and equipment usually employed in that business, costing a large sum of money, and had agreed and undertaken to pay the contractors $5,000.00 thereon for the month of June, and $6,000.00 for the month of July, and a like sum in all succeeding months until the entire cost of the refinery, plus ten per cent, had been paid to the contractor. It was in pursuance to this contract, signed as aforesaid, that the acceptance was made, which is here challenged. The board of directors did not delegate authority to the president to make the acceptance, and we do not think, all the facts considered, there was sufficient evidence to show that the president of the corporation had authority to make such acceptance on behalf of the corporation. The corporation was not bound thereby, in the absence of a showing that the board of directors had authorized the president to make the acceptance. The president's right and authority to make such acceptance was limited by the provisions of the charter and by-laws of the corporation. Without a resolution of the board of directors the acceptance was not the act of the corporation, and therefore not binding on it.

"A corporation, even a trading corporation, acts only through its officers actually empowered to do so, or by the acts of those permitted by it to do the thing in question. The former is the strictly legal way in which the corporation acts. The latter may bind, not because they are empowered to do so, but because having been held out or suffered to act in such capacity on the corporation's behalf so that those dealing with it are misled into the belief that the officers are so empowered in fact, the corporation is estopped to deny their legal authority.

"The president of a corporation has not the inherent power to borrow money for it and to execute

a note on its behalf. Such power must be delegated to him either by the by-laws or resolutions of its governing body or by its charter or by its custom of dealing.

"The burden was on the plaintiff, appellee. The plea of *non est factum* so placed it as to the execution of the note and the traverse in the answer of the allegation in the petition that the note was for money loaned the defendant so placed it with respect to the alleged consideration. . . . *It is true that it is proved that Van Arsdall signed the note,* that it was his genuine signature, but more is needed to make a promissory note of a corporation than the signature of the corporate name by its president. His authority must also be shown. That lacking in this case, the proof of the execution of the note as a valid promissory note failed. The note then imports nothing, raises no presumption of consideration as would a valid note, shifting the burden to the maker to prove lack of consideration." Star Mills v. Bailey, 140 Ky. 194.

For the reasons indicated the judgment is reversed for proceedings not inconsistent herewith.

Judgment reversed.