## Murray v. Bank of Jamestown.

(Decided February 24, 1925.)

### Appeal from Russell Circuit Court.

1. Bills and Notes—Whether Signatures were Forgeries Held for
   Jury.—Whether signatures of defendant's name on notes sued on
   were forgeries held for jury.

2. Bills and Notes—Verdict for Plaintiff Held Supported by Evidence
   of Genuineness of Defendant's Signatures.—Verdict for plaintiff
   held not so flagrantly against evidence on issue as to whether
   signatures of defendant's name on notes sued on were genuine
   as to authorize reversal.

W. J. CHUMBLEY and BERTRAM & BERTRAM for appellant.

R. E. LLOYD and J. R. GARNETT for appellee.

Opinion of the Court by Judge McCandless—Affirming.

The Bank of Jamestown sued Robert Murray on two notes. The first for five hundred dollars dated May 20, 1920, due twelve months after date, with interest paid to January 1, 1923, purporting to be signed by Omre Wolford and Robert Murray. The second dated July 1, 1920, for three hundred dollars, payable six months after date, purporting to have been executed by the same parties, with interest paid to same date, January 1, 1923.

Wolford was not served with process and Murray pleaded *non est factum*. From a judgment for plaintiff, Murray appeals, the sole ground urged for reversal being that the verdict is not sustained by the evidence.

The facts are: Wolford is a son-in-law of Murray and is shown to be an expert penman. Murray carried a deposit with the First National Bank of Russell Springs, but did no business with the Bank of Jamestown. In June, 1923, Wolford abandoned his wife and child and has not been heard from since. A few days later the bank demanded payment of the notes of Murray.

He claims to have never heard of them before, and positively denies signing or authorizing anyone to sign them for him. He does not sign notes as surety, but on cross-examination admitted that he did sign a note for Wolford to another bank, but said he was secured in so doing. He also admitted that he had an attack of sickness two or three years before, but that it did not affect

his mind. The cashier of the Russell Springs bank with whom he did business testified that the signatures on the notes were not genuine.

On the other hand, the cashier of the Bank of Jamestown testified that he prepared the notes at the instance of Wolford, who carried them away for signature and brought them back signed; that while Mr. Murray did not do business with his bank, he had handled a number of his checks and was acquainted with his handwriting and in his judgment the signatures to the notes were genuine. The assistant cashier was trustee of the jury fund of Russell county, and in this capacity had given Murray two checks, which Murray had endorsed; that he had the checks in his possession and the signature on the notes was "mighty like" the signatures of the checks, these being produced in evidence.

Eighteen checks admittedly signed by Robert Murray were introduced in evidence, and the signatures compared with those on the notes.

Robert Ingram, cashier of the Bank of Creelsboro, but formerly cashier of the Bank of Russell Springs for eleven years, during which time Robert Murray carried an account at that institution, testified that he was acquainted with the latter's handwriting and gave it as his opinion that the signatures on the notes were genuine, though he was not positive. He pointed out some differences in certain letters in the signatures on the notes and the same letters in other exhibits, but also detected similar differences between the various admitted signatures.

The originals exhibited have been brought to this court for our examination and it is urged that they clearly indicate that the signatures on the notes are spurious. We have carefully examined them and are unable to say that such is the case; indeed, they bear a striking similarity thereto, and if the signatures on the notes were forgeries, they were skilfully drawn. True, as stated by Ingram, some differences may be pointed out in the formation of certain letters in the signatures to the notes as compared with the same letters in some of the exhibits, but similar differences can be detected as between the admittedly genuine signatures.

All of this was peculiarly a question for the jury to determine, and upon the whole case we are unable to say that the verdict is so flagrantly against the evidence as to authorize a reversal. Torian v. Caldwell, 178 Ky. 509.

Perceiving no error, the judgment is affirmed.