# Coons et al. v. Bank of Commerce et al.

(Decided March 18, 1930.)

TOWNSEND & PARK for appellants.

AALEN, BOTTS & DUNCAN, FRANK GINOCCHIO and THOMPSON & THOMPSON for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

By a written contract bearing date January 10, 1920, Mrs. Kate H. Barbee and her husband agreed to sell and convey to Robert E. Beatty and Joe Houston a tract of land in Fayette county containing 240 acres. No deed was executed pursuant to the contract, as Beatty and Houston sold their interest in the land under the contract to A. C. Downing, who agreed with them to assume the

obligations of the contract. Beatty and Houston requested Mrs. Barbee to execute a deed of conveyance for the property to Downing upon the same consideration named in their contract. Mrs. Barbee agreed to the arrangements upon the condition that Beatty and Houston would indorse the first note for the deferred payments. Everything was satisfactory to all the parties when Mrs. Barbee conveyed the property direct to Downing, and Houston and Beatty indorsed the first note bearing date March 8, 1920, and payable one year thereafter. The face of the note was $32,725.

On July 17, 1920, Mrs. Barbee discounted this note to the Bank of Commerce for its full face value. Downing failed to pay the note at its maturity, and he paid no interest on it. The appellee bank gave notice of this fact to the indorsers, Mrs. Barbee, Beatty, and Houston. Beatty testified that he then had a conversation concerning the note with Downing, who requested an extension of time, and agreed that, if an extension should be granted, he would put up collateral to secure the payment of the note. Such an arrangement was made with the consent of the bank and the indorsers on the note, whereupon Downing assigned to the bank his equity in two lien notes. One for $25,666.66, which had been executed to him by B. F. Wells, and the other for $3,905, executed by Jennie L. Browning. These two notes were then held by the College of the Bible as collateral for the security of loans totalling $5,000 made by the college to Downing.

At the time the extension was agreed to on the 19th day of March, 1921, Downing executed a written agreement to the bank, wherein it was set up that, in consideration of the extension, Downing pledged, transferred, and assigned his equity in the two notes held by the College of the Bible. The Wells note, as recited in that written agreement, was secured by a lien on a part of the Wilson Berry farm of 140 acres, and the Browning note was secured by a lien on 24½ acres, a part of the Wilson Berry farm. He agreed that, when his indebtedness to the College of the Bible should be liquidated, he would have the notes then held by it turned over to the bank, to be held by it as collateral on the Browning note. Simultaneously with the execution of the agreement relating to the extension which was signed by Downing, the indorsers, Barbee, Beatty, and Houston, consented in writing to the extension.

In May, 1921, Downing desired to borrow $2,000 additional from the College of the Bible and to use the equity in the notes which the bank then held, and which were mentioned in the agreement with the bank as collateral to secure the additional loan. Before he could do this, it was necessary that the bank consent to it. The bank did consent, and a writing was executed, signed by the indorsers evidencing their consent to his obtaining the additional loan. When this agreement had been completed, appellee bank had, as security for the payment of the note for $32,725, a vendor's lien on the 240-acre tract of land subject to a $24,000 mortgage in favor of the Mutual Benefit Life Insurance Company, a lien note held by the same bank for $32,725, another lien note held by Mrs. Barbee for $32,725, and another lien note held by Mrs. Barbee for $8,725. The consideration which was evidenced by lien notes executed by Downing for the land was of equal dignity, but was subordinate to the $24,000 mortgage held by the insurance company.

In addition to the vendor's lien, the bank also held the equity of Downing in the two notes pledged to the College of the Bible. Downing paid $6,325 on the principal of the note which had been assigned to the bank by Mrs. Barbee some time prior to September 6, 1922, the date on which the writing sued on was executed. On that date Downing undertook to obtain the surrender of his equity in the Wells and Browning notes which the bank then held under the assignment of date March 19, 1921. He went to his father-in-law, Josiah Coons, and his brother-in-law, H. E. Coons, for assistance in getting his equity in the two notes released, and in furtherance of the consummation of that object they executed the writing sued on which recited that on March 8, 1920, Downing had executed a one year note to Mrs. Barbee for the sum of $32,725, which note was secured by a lien on farm lands.

It was recited that there were certain credits on the note: one for $4,242.54, of date March 19, 1921, and another for $2,107.95, of date May 20, 1922, and that the note was indorsed by Robert E. Beatty, Joseph Houston, and Kate H. Barbee. It was also recited that the time of the payment of the note had been extended by the written consent of Mrs. Barbee, Beatty, and Houston. It was further recited that Josiah Coons and H. E. Coons would assume the payment of the Browning note then held by the bank in the sum of $19,000, and they, then and there,

by the terms of the writing, guaranteed the payment of the sum of $19,000 on the note, and agreed to indemnify the appellees as well as the indorsers, Mrs. Barbee, Beatty, and Houston, in the sum of $19,000. The contract recited that it was executed in consideration of the agreement on the part of the bank to surrender the equity in the two notes held by the College of the Bible as collateral for the security of the Browning note. The concluding paragraph of the written agreement signed by Josiah Coons and H. E. Coons is in this language:

> "The undersigned, Josiah Coons and H. E. Coons, have by virtue of this instrument, agreed with the holder of said note, to wit, the Bank of Commerce, and endorsers thereof, that they will pay on demand the said $19,000 a portion of said note, together with interest on same, 6 per cent., from this, the —— day of September, 1922."

In July, 1924, Downing filed his petition, and was adjudged a bankrupt, and all of his estate, including the 240 acres of land, was sold and the proceeds distributed. The bank filed its proof of claim for the balance due on the $32,725 note which was allowed. After the distribution of the proceeds of the estate of the bankrupt and the applying of all credits on the note received by the bank therefrom, there was left due a balance on the note of $9,317.99, with interest from November 23, 1925. The bank demanded payment of the balance with interest from the appellants under the terms of the writing of date September 6, 1922, but the appellants refused to pay, and this action was instituted by the bank and the indorsers on the note for whose benefit the contract was executed by appellants. The suit was instituted at law, but, by agreement of parties, it was transferred to the equity side of the docket, and the testimony was heard orally by the court. The court awarded a judgment against appellants for the full amount claimed.

The first ground for reversal relied on by appellants is that the contract is a conditional guaranty, or guaranty of collection, and that no liability was incurred by appellants, unless by reasonable or proper diligence appellees were unable to collect from the principal debtor. Counsel for appellants have devoted considerable time to the discussion of this point. The written contract filed by appellants speaks for itself. We find

little merit in the contention that the contract was one of conditional guaranty. A reading of the contract convinces the court that it was an absolute guaranty of payment. A guaranty of payment is where the guarantor undertakes unconditionally that the debtor will pay, and that was the nature of the guaranty expressed in the writing. The case of Galbraith v. Shores-Mueller Co., 178 Ky. 688, 199 S. W. 779, is not in point, as the court was there dealing with a conditional guaranty, and, as pointed out by the court, a conditional guaranty imports the happening of some contingency other than the default of the principal debtor. For the same reason the other authorities cited by counsel for appellants have no application. They all deal with conditional guaranties.

Another point relied on is that the guaranty contract was executed and delivered by the appellants upon the express agreement of the bank that it would with due and proper diligence collect the note and enforce the lien against the property, and that, as it failed to do so, it lost any right that it may have had to proceed against appellants. The part of the answer wherein it was attempted to plead that the bank represented to appellants that the land was worth the debt and that proper steps would be taken to sell the land, and for these reasons appellants would incur no liability, by executing the writing, was stricken on motion. There was no allegation of mistake in the execution of the contract or that anything was left out that it was intended by the parties should be included. The pleading does not contain allegations to constitute a plea that their signatures were obtained by fraud, or that they were induced to sign the contract by reason of fraud practiced upon them by the bank. They attempt to argue that the consideration for their signing the contract was the representation that they would incur no liability for the reasons stated, but the contract expressly states that the consideration for their signing it was that the bank would release the equity of Downing in the two notes held by the College of the Bible. The makers of a contract such as the one sued on cannot vary the terms of the contract by parol, in the absence of an allegation of fraud or mistake. Brown v. Turpin, 229 Ky. 383, 17 S. W. (2d) 253. The case of Boeckley v. Central Savings Bank & Trust Co., 205 Ky. 508, 266 S. W. 15, is relied on by counsel for appellees. It is well in point, and it was there held that allegations such as were stricken by the

court and mentioned above constituted no defense to a suit for the collection of a note signed by the defendant.

The allegations in the answer were not sufficient, if proven, to establish actionable fraud, or fraud against which equity will relieve. Such fraud must consist of misrepresentation of material facts as distinguished from a mere opinion at the time, or previously existing. If the misrepresentation is no more than an opinion of what may develop in the future, or is no more than the mere promise as to what may happen in the future, it does not constitute actionable fraud. Such fraud must relate to material matters, and must be relied on by the person whose action it is intended to influence, and must be made with a knowledge of its falsity, or under such circumstances as did not justify a belief in the truth of the representations by the persons making them. Livermore v. Middlesborough Town-Lands Co., 106 Ky. 140, 50 S. W. 6, 20 Ky. Law Rep. 1704; 12 R. C. L. 340. In the case of Ryan v. Middlesborough Town-Lands Co., 106 Ky. 181, 52 S. W. 33, 21 Ky. Law Rep. 193, it was held that a promissory representation relating to the future whether to be performed by the promisor or a third person is not a basis for legal or equitable relief, unless incorporated in the writing or averred to have been omitted by fraud or mistake. A late case on the same question is that of Brenard Manufacturing Co. v. Raffel, 214 Ky. 604, 283 S. W. 964.

Another point urged for the reversal of the judgment below is that appellees failed to prove the consideration as alleged in their petition for the execution of the contract sued on. Where consideration is alleged in the petition and denied by the answer, the burden is on the plaintiff to prove the consideration. Mutual Oil & Refining Co. v. Clay, 206 Ky. 371, 267 S. W. 200. Even if it be conceded that under the statutes a written contract such as the one sued on imports a consideration, and that it is not necessary to allege or prove the consideration, yet there is an exception to this general rule which is to the effect that, if one suing on an instrument importing a consideration unnecessarily sets out the consideration and it is denied, he must prove it. Torian v. Caldwell, 178 Ky. 509, 199 S. W. 35; Branston's Adm'r v. Lakes, 135 Ky. 173, 121 S. W. 1021. It is true that appellees allege the consideration in the petition, and that it was denied by answer. The consideration as alleged in the petition was that the bank should release

its claim to the equity in the notes of Downing held by the College of the Bible. The evidence established that appellees held an equity in these notes, and the writing sued on recites that the equity so owned by the bank was released and it is further shown that the bank released its equity in these notes after the execution of the instrument sued on.

There is no doubt that it is established by the evidence that the bank released its equity in these notes. That is shown by the writing itself, but, in addition, it was testified by the president of the Bank of Commerce that he notified the College of the Bible that the bank had no further interest in these two notes. The bank took other steps, not necessary to recite, showing that it released its equity in these notes. Counsel for appellants devote the greater part of their brief to a discussion of this question, and, while their case on this point is presented in a most interesting manner, the facts disclosed by the record are not so complicated as might be inferred from a reading of that brief. We deem it unnecessary to go any further than the contract which was executed by appellants to determine whether the bank surrendered its equity in the two notes. The contract itself so recites, and it was in evidence. It was therefore shown that the consideration was the surrender of the equity held by the bank in these notes, and that it surrendered that equity by the terms of the contract itself. If it should be necessary to point out further evidence in the record showing the consideration for the contract, it could be done without great difficulty, but we deem it unnecessary.

Another point made against the judgment below is that appellants only guaranteed that $19,000 would be paid upon the Downing note, and that that sum was paid. This contention is without any merit. Appellants agreed that they would pay $19,000 on the note, if called upon to do so, and the fact that that sum was paid by others would not release the appellants from payment of the note up to the amount of $19,000 if that sum should be necessary to satisfy the balance due on the note.

The last contention made by appellants is that they were entitled to an additional credit of $2,260, paid by Downing on May 10, 1920. Downing was hard pressed for money at this time, and the note was not due at the time he claims he made this payment, which is one point against him to start with. The evidence made a question as to whether the $2,260 should be credited on the note

assigned to the bank, as a part of a cash payment which was to be made at the time of the completion of the sale, but which was not made until later. It is true the deed which was executed by Mrs. Barbee recited the payment of a certain amount of cash, but the testimony does not bear out that recital in the deed, and the sole question before the chancellor on this point was whether the $2,260 was intended to be applied as a credit on the note held by the bank. The chancellor held otherwise, and we think he is supported by the weight of the evidence.

Judgment affirmed.