# Kentucky River Coal Corporation v. Knott County et al.

(Decided February 27, 1931.)

P. T. WHEELER for appellant.

C. P. STEPHENS and JAMES PERKINS for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

The Kentucky River Coal Corporation owns large bodies of land in Knott county and complains on this appeal of the amount at which the land was assessed for taxation. The list of the leased property in question as filed by appellant was as follows:

| | | | |
|---|---|---|---|
| No. 1. | Dudley Coal Co. Tract: | | |
| | 323 Acres N. B. & M. Out | $ 1 00 | $ 323 00 |
| | 340 Acres Recoverable Coal | 50 00 | 17,000 00 |
| No. 2. | Hardy-Burlingham M. Co. Tract: | | |
| | 1131 A. Recoverable | $50 00 | $ 56,550 00 |
| | 1933 A. N. B. & M. Out | 1 00 | 1,933 00 |
| No. 3. | Knott Coal Corp. Tract: | | |
| | 448 A. Recoverable | $80 00 | $35,840 00 |
| | 1587 N. B. & M. Out | 1 00 | 1,587 00 |
| | 564 Acres Surface | 5 00 | 2,820 00 |
| No. 4. | Marion Coal Co. Tract: | | |
| | 20 A. Recoverable Coal | $50 00 | $ 1,000 00 |
| | 10 A. N. B & M. Out | 1 00 | 10 00 |
| No. 5 | Perkins Bowling Coal Corp. Tract: | | |
| | 397 Acres Recoverable | $50 00 | $ 19,850 00 |
| | 873 A. M. Out N. B. | 1 00 | 873 00 |
| | 243 A. Surface | 5 00 | 1,215 00 |
| No. 6. | Wisconsin Coal Corp. Tract: | | |
| | 166 A. No. 9 Recoverable | $60 00 | $ 9,960 00 |
| | 697 No. 4 Recoverable | 40 00 | 27,880 00 |
| | 48 Acres Surface | 5 00 | 240 00 |
| | 66 A. N. B. & M. Out | 1 00 | 66 00 |

"N. B." above stands for noncoal bearing; "M Out" for mined out. The board raised the assessment of the land with recoverable coal in tracts 1, 2, 4, and 5 from $50 per acre to $75 per acre; it lowered the land with recoverable coal in tract 3 from $80 to $75; it raised in tract 6 to 166 acres, No. 9 recoverable coal from $60 to $75 per acre and raised in that tract 697 acres, No. 4 recoverable coal from $40 to $75 per acre, making in all the net raise $71,845 on appellant's leased land. Appellant also owned in fee what is known in the record as the quicksand tract, which was not leased and was listed by it thus:

| | | |
|---|---|---|
| 2641 Acres Non Coal bearing at | $1 00 | $ 2,641 00 |
| 2641 Acres surface at | 5 00 | 13,205 00 |
| Total | | $15,846 00 |

The board assessed this land thus:

| | | |
|---|---|---|
| 2641 Acres at | $7 00 | $18,487 00 |
| 2641 Acres surface at | 5 00 | 13,205 00 |
| Total | | $31,692 00 |

This was a raise of $16,128 on these lands, making the board's total net raise $87,973.

On appeal to the quarterly court, it was held that the company was entitled to a reduction for duplication of tracts, amounting to $14,085. It was also held that the assessment on the quicksand tract should be reduced $9,676.80, and that the assessment on 697 acres in the Wisconsin tract, which was valued by the company at $40 an acre and raised by the board to $75, should be reduced $25, making a total reduction on this tract of $17,475. Thus a total reduction was made from the amount of assessment by the board amounting to $42,236, leaving the balance of the assessment at $321,739. The company appealed from the judgment of the quarterly court to the circuit court, which upheld the judgment of the quarterly court, and from this judgment the company has appealed to this court.

There is no dispute as to the amount of land duplicated; this matter was not presented before the board and it is conceded that the court properly fixed the amount of the duplication at $14,085. The board fixed the value of the recoverable coal in the Knott Coal Corporation tract on No. 3 above at $75, while the appellant

had fixed this at $80. There is, therefore, no room for complaint as to this tract. There was in the pleading no allegation of mistake in this acreage and this objection is not available here. The assessment of the Wisconsin Coal Corporation tract, as reparted by the appellant, amounted to $38,166. The assessment as raised by the board amounted to $65,231. This was reduced by the court $17,475, leaving the balance $47,756, which was a raise of $9,590 on that tract. Appellant raises here the question as to the acreage of the quicksand lands owned in fee, but its witness G. F. Howard testifies that the acreage is 2,680 acres. The board assessed this land at $31,692. The court lowered this $9,676, leaving the assessment at $22,015.20. Appellant's assessment of this land was $15,846. So the raise on this tract was $6,-169.20. The court has laid down these rules in cases of this character:

"Absolute equality in matters of taxation is unattainable. Exactitude is not to be expected in tax matters. Experience has conclusively shown that practical equality is all that can be reached in such matters." Swift Coal & Timber Co. v. Board of Tax Supervisors, 233 Ky. 461, 3 S. W. (2d) 1067, 1068.

"Though a taxpayer may have relief from unlawful discrimination when property is assessed at higher valuation than other property of same class, such relief cannot be had without showing that discrimination was tantamount to intentional discrimination on part of taxing authorities." Siler v. Board of Supervisors of Whitley Co., 221 Ky. 100, 298 S. W. 189.

"The lands of other owners in the immediate vicinity are shown to have been listed at a low valuation. There is evidence to the effect that those lands were less valuable than appellant's. Only a question of fact was presented, and we are unable to say from the evidence in the record that the learned circuit judge did not correctly fix the valuation of appellant's lands," etc. Brown v. Wayne County Board of Supervisors, 204 Ky. 550, 264 S. W. 1073, 1074.

"Judgment of circuit court assessing land for purposes of taxation should not be reversed, unless clearly against weight of evidence, circuit judge

having seen and heard witnesses.'' Grant County Board of Supervisors v. Williams, 204 Ky. 722, 265 S. W. 286.

It is earnestly insisted for appellant that its leased property has been valued for taxation above its fair cash value and that all other leased properties in the taxing district are valued at less than half their cash value.

On the other hand, the proof for the appellee is that the board divided the county into zones, having due regard to the coal in the land and its nearness to development, and all the land in each zone was assessed alike. There is no proof that these zones were not based upon reasonable grounds, and it is clear from the proof that the board in fact tried to assess all property alike, without regard to who owned it. Appellant relies upon certain assessments made against other corporations at a certain price per acre for all their land, but when appellant's own assessments are considered in the same way, that is, the assessment per acre, considering the total amount of land and the total of the assessment, the court is unable to see that any injustice was done appellant; for its assessment thus considered it not as high as the other property. Appellant points out that the land of the Garrard Brothers was assessed lower than its land, but the board, as shown by the proof, labored under a mistake as to this land, thinking that it was not leased. Complaint is also made that the Montgomery Coal Company was assessed lower, but its assessment was made at so much an acre for its total number of acres. The coal bearing lands were not separately valued. On the whole case it is clear to the court that the board tried simply to do its duty and to assess all alike. But, of course, in such cases all the facts are to be considered and a difference of circumstances may warrant a difference of assessment. The court does not find, under the proof, that appellant's land is assessed more highly than it should be. The proof shows that each vein of coal, in its coal bearing land, will produce from four thousand to six thousand tons of coal to the acre. There are on most of its land two or three such veins. Under its leases it gets 10 cents a ton for the coal mined. This will net it from $400 to $600 an acre, for each vein of coal that is worked out. Some of the veins are not workable on some of the tracts. But as a rule at least two veins are work-

able. The proof shows that it will take about thirty or forty years to work out the leases. But the present cash value of what appellant will in the meantime get for its coal makes the present value of its land more than $100 an acre. In addition to this, appellant has sold the oil under its land, reserving as royalty one-eighth of the oil, and while the land has not been developed for oil and its value for oil can not now be determined, this is an interest in the land which may be taken into consideration in assessing it.

A large amount of testimony was taken orally in court on the hearing of the case. The court deems it unnecessary to go into this testimony further than as above stated. Both the quarterly court and the circuit court, with the judges in the locality and understanding local conditions, reached the same conclusion, and great weight should be given here to their finding on the facts. Appellant in its valuation valued the 448 acres with recoverable coal in the Knott tract at $80 an acre. It valued the 166 acres with No. 9 recoverable coal in the Wisconsin tract at $60 an acre; but its witness H. T. Howard testifies that $75 an acre was not too much for this land. Under all the facts it cannot be said that the board abused a sound discretion in valuing the other tracts also at $75.

As to the amount of coal in the quicksand property that was not leased, the proof is not clear. No surveys of this land are shown to have been made to ascertain the facts. George Eckert testifies that the minable area of No. 7 coal does not cover more than 35 or 40 per cent. of this section. G. T. Howard, appellant's engineer, filed an affidavit before the board that not over 33 1-3 per cent. was underlaid with coal. Howard filed with his testimony the affidavit of George Fitzpatrick as to a certain seam of coal and stated that about 40 per cent. of this acreage contained that seam of coal, but that this seam was without commercial value. There are other seams in this territory and the proof fails to show as to them. There is a certain amount of uniformity in the coal seams through this section, and in the absence of more positive proof this court cannot say that the circuit court, sitting in the county and having more or less knowledge of local conditions, substantially erred in fixing the noncoal bearing lands at 60 per cent. Besides

the coal in this land the company owns the one-eighth royalty interest in the oil as in the other land.

While there is proof in the record that some lands have been sold at less prices than appellant's lands were assessed at, the difference was not great and there is proof in the record that appellant bought land not long before this at prices per acre for the whole tract considerably larger than the amount of the assessment for the whole tract, here complained of.

On the whole case, and giving the judgment of the circuit court on the conflicting evidence its proper effect, under the rule heretofore laid down, this court cannot disturb the assessment as thus fixed for the year in controversy under the proof as now presented.

The bill of exceptions giving the evidence heard on the trial does not show that the affidavit of B. F. Combs was read on the trial and it cannot be considered here.

Judgment affirmed.