# Kentucky River Coal Corporation v. Knott County.

(Decided April 28, 1933.)

P. T. WHEELER, JESSE MORGAN and J. E. JOHNSON, Jr. for appellant.

C. P. STEVENS and J. E. PERKINS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This appeal is one of the annual ones made to this court by appellant, Kentucky River Coal Corporation, in its repeated efforts to prevent the taxing authorities

of Knott county, Ky., from confiscating its property by excessive taxation, brought about by exorbitant assessment valuations put upon it by the county board of supervisors, and by listing property to it that it does not own, and most generally approved on appeal to the quarterly court of the county, and by the circuit court on appeal to it from the judgment of the quarterly court. For an informative history of such litigation of more recent date, reference is made to the cases of the same style in 239 Ky. 18, 39 S. W. (2d) 190, and 245 Ky. 822, 54 S. W. (2d) 377. The case reported in 239 Kentucky involved the assessment as of date July 1, 1927, for taxes payable and collectible in the year 1928; while the case reported in 245 Kentucky involved the assessments as of July 1 in the years 1928 and 1929 for the taxes payable and collectible in the years following.

The appellant is not a coal operator and not actively engaged in mining, but it owns in fee a considerable acreage in Knott county, and also owns a considerable acreage of coal mineral under lease, or purchase, but not the fee in the land. On some of its land so owned in that county it has given mining privileges to various operating companies, and in making out its list for the years referred to, including the particular one involved in this case (as of date July 1, 1930), it returned separate lists for the various qualities of land, and coal thereunder, so leased to such operating companies. It then listed all of its unleased fee land in the county, and its unleased land in which it owned only coal rights, each of which was separately stated and valued. For the year involved in this case (assessment as of date July 1, 1930) appellant returned for assessment a total valuation of all of its holdings in Knott county of $240,059. The board of equalization of the county raised the assessment so returned by appellant to the sum of $684,080, or a total raise of $444,021. An appeal was prosecuted from that order of the board of equalization to the quarterly court of the county, and it affirmed the raise made by the board. Appellant then appealed therefrom to the Knott circuit court, and after extensive hearing in that court, it, in its judgment, struck from the list made by the board of equalization (and approved by the quarterly court) a considerable number of acres of land that the appellant did not own at all, and made some slight reductions in other items on the list, and then rendered judgment fixing the total

valuation of appellant's property for that year (1930) at $615,068, thereby sustaining a raise over the assessment returned by appellant of the total sum of $376,056. From that judgment appellant prosecutes this appeal, insisting that the assessment, so approved by the appellate tribunals through which the property owner had traveled, was exorbitantly excessive and discriminatory, and that some of it represented property not owned at all by appellant; all of which we are convinced was and is true.

We are not disposed to enter into a discussion of the evidence in detail, as applicable to the various subdivisions and items of appellant's property, and the valuations placed thereon which go to make up the total value certified for taxation purposes, since in doing so we would purposely assume the perplexing task of traveling through the tangled and somewhat contradictory condition of the evidence directed to the sole question of fact involved in the appeal and which, we conclude, is sufficiently dealt with in the opinions supra, to which reference will be later made.

Before determining the issue of fact, it might be appropriate to call attention to section 172 of our Constitution, which expressly prescribes that all property subject to ad valorem tax "shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale," and which is followed by the provision that any assessing officer who shall willfully depart from the performance of his duty, as so prescribed, "shall be deemed guilty of misfeasance, and upon conviction thereof shall forfeit his office, and be otherwise punished, as may be provided by law." Numerous are the decisions from this court calling attention to such constitutional provision, and in which we declared that the valuation mentioned in the section was and is to be determined as of the day (July 1 each year) that the assessment is to be made, and which, necessarily, requires a revaluation each successive year. With such facts in mind we will now proceed to a determination of the single issue of fact involved in the case.

We suggested above our reasons for not going into a detailed analysis of the testimony concerning each item of property, chief among which was, and is, our determinations in our former opinions, supra, concern-

ing the same issue relating to the same property as presented in identical proceedings, and largely upon the same testimony given by the same witnesses. Particularly is the last opinion supra (245 Ky. 822, 54 S. W. [2d] 377) peculiarly so applicable. In the first opinion supra (239 Ky. 18, 39 S. W. [2d] 190) the board of equalization raised appellant's assessment for the assessing year there involved (1927) only $87,973, which was reduced on appeal to the quarterly court $42,236, leaving an approved raise of appellant's return for that year of $45,737, and which the circuit court on appeal approved, and which latter judgment was affirmed by us in that case, thus making for that year only a final raise of the latter sum, and which the proof in that case fully justified.

Turning now to the facts as disclosed in the last opinion supra (245 Ky. 822, 54 S. W. [2d] 377), we find that the total assessment returned by appellant as of the assessing date in 1928 was $260,402, which the board of equalization increased to $1,078,060, a total raise of $817,658. On appeal to the quarterly court the total valuation fixed by the county board of equalization was reduced to the sum of $336,375, and which was affirmed on appeal to the Knott circuit court.

The appellant returned a list of all of its property in Knott county as of the assessing date in 1929, of a total valuation of $240,435, which the county board of equalization raised $410,586, or to a total amount of $651,021. On appeal to the quarterly court of the county, the total valuation for that year was fixed at $484,210, which the Knott circuit court affirmed on an appeal to it, and which was a raise of $243,775 above the valuation returned by appellant on its assessment list for that year. The case in 245 Ky. 822, 54 S. W. (2d) 377, 380, also disposes of the appeal prosecuted by appellant from that judgment of the Knott circuit court. In discussing the facts in that opinion we called attention therein to the inescapable one, that the county board of equalization, as well as the courts to which appeals were taken, annually raised the assessment value of appellant's property in the face of the fact that the testimony overwhelmingly and uncontradictedly established that its marketable value had continued to decline for some years past, and particularly since the depression over the country began in 1928. Also that

such increases were over and above the valuations placed by the same tribunals for the previous year, notwithstanding the steady decline in market value. In referring to that aspect of the case with reference to the increase of the assessment as of date July 1, 1928, our opinion in that case said: "The result of the judgment [fixing the correct valuation as of date July 1, 1928] was to raise the assessment for all property for 1929 ['the year in which the taxes were due and collectible] from $260,402 to $336,375. This was an increase of $14,636 over the assessment of the same land for 1928 taxes, sustained by this court," in the first case supra, reported in 239 Ky. 18, 39 S. W. (2d) 190. The same opinion (245 Ky.), in referring to the judgment appealed from, involving the assessment as of July 1, 1929 (the assessment for both of which years and the appeals therefrom were consolidated and tried together), said: "The result of 'this judgment was to raise the assessment for all property for 1930 [collectible that year] from $240,435 to $484,210. This was an increase of $243,775 over the value listed, and of $147,835 above the 1929 value fixed in the same judgment for 'the same property. It is $162,471 more than the value for 1928, approved by this court."

In that case (245 Ky. 822, 54 S. W. [2d] 377), we reversed the judgments for both of the assessing years 1928 and 1929, and directed the assessments for those years as returned by the property owner to be reinstated as a correct valuation of its property for assessment purposes in Knott county, thus fixing its value for the assessment dates of 1928 and 1929 at $260,402 for the first year and $240,435 for the second one; the decrease of nearly $20,000 being due mainly to shrinkage in value because of the depression and economic conditions. But, notwithstanding our approval of those valuations for the years mentioned (being the two immediately preceding the year here involved), the board of equalization of Knott county in this case raised the amount of appellant's assessment list for the year here involved (assessment made in 1930) to the amount above stated ($684,080) or $423,678 in excess of our approved valuation for the assessing year of 1928, and $443,645 in excess of our approved valuation for the assessing year 1929, and which, to our minds, is almost conclusive proof, aside from that given on the hearing of this case in the circuit court, that the charges made

by appellant in its petition or statement (filed in the Knott quarterly court in taking its appeal thereto from the valuation made by the county board of equalization) were and are to a large extent true, and which is in confirmation of the old adage that, "The power to tax is the power to destroy," when the tax levying authorities are disposed to so employ it. For many years in the history of our country the spirit of extravagance, and other methods of depleting the public treasury, did not prevail and during which time the adage was with us, "as sounding brass, or a tinkling cymbal." But in more recent times the truth of the adage has received demonstration, due to the fact of extravagance and reckless public expenditures, much of which was without value to the public and for which it received but little, if any, benefit, and in some instances public revenues have suffered by downright graft in the handling of public funds.

The evidence in this case, by agreement, consists largely of the identical proof heard in the cases determined in the 245 Kentucky case, supra, and the various acreages allotted to the various items and classes of property and minerals were and are practically the same in this case as was true in the cases involved in that one, and there is no escape from the conclusion that the valuation fixed by appellant on its entire property subject to taxation in Knott county ($240,059) was and is a reasonably fair and just one under the circumstances and conditions and should not have been raised by the county board of equalization, nor should its action in doing so have been in any manner or to any extent approved by the Knott quarterly court, or the Knott circuit court as hereinbefore indicated, and to the amounts above set out.

Aside from the situation supra, portrayed by reference to our opinion in the 245 Kentucky case, the testimony on the hearing of this case in the circuit court offered by appellant was given mainly by educated and experienced mining engineers, some of whom were not in its employ, and who unanimously agreed, from information obtained by actual tests, that the assessments returned by appellant in its list were reasonable, but if erroneous at all it was because of an excessive one, voluntarily returned in an effort to satisfy the county taxing authorities and thereby cir-

cumvent continuous protracted annual litigation. That testimony was attempted to be refuted by Knott county introducing some landowners in the neighborhood of the property of appellant, but frequently some five or six miles therefrom, who testified about valuations of specific small parcels of land that had been sold during the last ten or fifteen years at prices which the court adopted as a fair one for the entire acreage of appellant's property, when it was demonstrated on cross-examination (and also by other witnesses) that such valuations were due to the fact that appellant or other similar companies paid the price for such lands in order to shape up and straighten out their respective tracts and in most, if not all, of them the small tracts purchased were improved by having residences and outbuildings constructed upon them, and upon which much of the land was cleared for agricultural purposes; also, it appeared that such tracts when so purchased at the named prices carried with them the oil and gas privileges, as well as the coal mineral, but which former have long since been sold by the appellant and it did not own the oil and gas privileges on the assessing date.

Moreover, the board of equalization for the year involved in this case reached out and incorporated in the total acreage of appellant much land that it did not own at all, and some of which the attorney representing the county in his brief in this court admits and concedes. The purpose of the taxing county authorities in making the raise complained of is to some extent explained by revelations found in the record to the effect that the building of a new courthouse had cost the county of Knott so much that it needed the money, and since "necessity is the mother of invention," it might be concluded that the raises made in the property actually owned by appellant, and in seeking to tax it with property that it did not own, were inventions born of that necessity. But, whether true or not, the evidence completely demonstrates, and which is fortified by our former opinions referred to, that the raise made on appellant's property for the year involved was unauthorized and unsupported by the testimony adduced at the trial, much of which, we repeat, was the same as that heard in the litigation involving the two assessing years of 1928 and 1929, reviewed by us in the 245 Kentucky case, supra, and in which the raises therein attempted to be made were disallowed.

Wherefore, the judgment is reversed, with directions to set it aside and to render one fixing the assessment valuations of appellant's property in Knott county at the amount returned by it in its assessment list for that year (1930), and for other required proceedings not inconsistent with this opinion.