BOWMAN v. MONTCALM CIRCUIT JUDGE.

1. TAXATION—STATEMENTS OF PROPERTY OWNERS—VALUATIONS—
POWER OF ASSESSOR.
    The valuations contained in the tax statements furnished by
    property owners under the statute are not conclusive on the
    assessing officer, but may be either raised or lowered by him.

2. SAME—EVIDENCE.
    Under 1 Comp. Laws, § 3846, providing that the tax statements
    of property owners shall be used only for making an assess-
    ment of taxes, or for enforcing the provisions of the tax
    law, such statements are not competent evidence, on behalf
    of one suing to recover taxes paid under protest on the
    ground of a fraudulent undervaluation of other classes of
    property, to show that such property was assessed at less
    than the values placed thereon by the owners.

*Mandamus* by Edward J. Bowman, city attorney of
the city of Greenville, to compel Frank D. M. Davis, cir-
cuit judge of Montcalm county, to vacate an order requir-
ing the production of certain taxpayers' statements for use
in a suit at law. Submitted February 4, 1902. Writ
granted March 4, 1902.

*George E. & M. A. Nichols*, for relator.

*N. O. Griswold* and *C. L. Rarden*, for respondent.

HOOKER, C. J. Winter, the owner of a livery stable
in the city of Greenville, paid his tax under protest, and
sued to recover it back. The property assessed amounted
to about $1,000, and was largely, if not wholly, personal
property used in his livery business. The protest is a
lengthy and carefully prepared document, alleging that
assessing officers and board of review, "purposely, will-
fully, and fraudulently, with intent to injure him, and to
require of him a greater amount of tax than his just pro-
portion, neglected and refused to take into account and

assess the following classes of property, either *in toto*, or, when assessed at all, neglected and refused to assess the same at its true cash value," viz., diamonds, musical instruments, horses, cows, and other animals (except livery stock), real estate (which he alleges was purposely undervalued with intent to cheat and defraud him), and stocks of goods, wares, and merchandise. The protest further alleges that the officers purposely assessed the Ranney Refrigerator Company for one-third, or thereabouts, of the cash value of its property as listed by it, and that others were assessed upon personal property at less than the amount owned by them. Many other reasons were mentioned in the protest, but, as this application relates to those stated, we need not refer to them further. A bill of particulars was demanded, the notice asking that plaintiff specify the particular instances where the assessing officers and board of review willfully neglected their duty. A bill of particulars being ordered by the court, the plaintiff moved the court for an order that the statements made under the statute by residents of the city of Greenville for the purpose of taxation for the year 1900 (being the year in question) be filed with the clerk of the court, for the use of the plaintiff in making his bill of particulars. This motion was granted, and an order was made requiring the defendant city and its clerk, Byron C. Tower, or any other officer having the custody of said statements, to file the same with the clerk of the court. Thereupon the relator, the city attorney, upon behalf of himself and the clerk, applied to this court for a *mandamus* to compel the circuit court to vacate said order.

The answer shows that the parties have stipulated to waive all other questions except that of " whether the law or the statute referred to [*i. e.*, the tax law] prohibits the use of such statements in evidence upon the trial of the issue in said suit; " it being conceded before said court upon the hearing of said motion that, if such papers and statements are proper or competent evidence upon the trial of the issue joined, then said circuit judge had the

power to require them to be filed with the county clerk. The question, then, is, May a taxpayer pay his tax under protest, upon the claim that a higher tax is required of him than would be the case if all property shown by the statements were listed at the valuation therein stated, and, upon the theory that the omission was fraudulent, bring before the court all of the statements in possession of the authorities, in the hope that he may be able to prove his claim by them ?

The object of the statute requiring taxpayers to furnish lists is to bring to light property which might otherwise escape the search of the assessor. *Turner* v. *Muskegon Circuit Judge*, 95 Mich. 4 (54 N. W. 705); 1 Comp. Laws, §§ 3841, 3846. It is intended to afford him information upon which he and the board of review may make a fair assessment of property. If the statement contains valuations of the items of property mentioned in it, such estimates are not conclusive upon the assessor. If they were, the taxpayer, and not the assessor, would assess the property, practically. As it is, the assessor must do that from his knowledge and information. Many cases hold that he may raise such valuations, and, while it is not to be expected that cases would often arise where valuations are lowered, such cases are not entirely wanting. See *Collier* v. *Morrow*, 90 Ga. 148 (15 S. E. 768). See, also, *Oregon, etc., Sav. Bank* v. *Jordan*, 16 Or. 113 (17 Pac. 621); *People* v. *Com'rs of Taxes*, 76 N. Y. 75; *Nevada* v. *Kruttschnitt*, 4 Nev. 186.

The statute (1 Comp. Laws, § 3846) shows upon its face a design that these statements shall be used only in furtherance of the objects for which they are required, and that they are not to be considered a public record, in the ordinary sense of the term. Provision is made for their custody and the inviolability of their contents during the limited time that they are expected to be preserved. It provides that "no such statement shall be used for any other purpose except the making of an assessment for taxes as herein provided, or for enforcing the provisions

of this act." Counsel contend that the use proposed would be a use for the enforcing of the act; but we think such a construction too broad. What is meant is that the public may use a statement against the one who made it, in a proceeding calculated to induce a full and fair assessment of his property. It may be used in the first instance by the assessor, and later by the board of review. Whether it could be used in any case in a court of justice we need not now inquire; it being sufficient to say that it was not designed to be within the reach of strangers to it, as evidence upon which they might resist the purpose of the act, and thereby avoid assessments against them in cases similar to the present.

The writ will issue as prayed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.