## Eminence Distillery Company v. Henry County Board of Supervisors, et al.

### (Decided January 25, 1918.)

### Appeal from Henry Circuit Court.

1. Taxation—Review, Correction or Setting Aside of Assessment.— Under section 4128, Kentucky Statutes, a taxpayer who feels himself aggrieved by the action of the board of supervisors, may, within thirty days after the final adjournment of the board, appeal to the quarterly court, and from the judgment of the quarterly court, he may appeal to the circuit court, and to the Court of Appeals, as in other civil cases.

2. Taxation—Assessment—Fair Cash Value.—In determining the "fair cash value" of property for taxation, the constitution and statute provide, that it "shall be estimated" at the price that "it would bring at a fair voluntary sale," and this makes necessary the contemplation of the willingness of the owner to sell and a purchaser willing to buy.

3. Taxation—Assessment—How Value Estimated.—Where no recent voluntary sales of similar property have been made from which can be estimated the value of property for taxation, where the value must be estimated at the price it would sell for at a "fair voluntary sale," the assessing authorities will take into consideration the conditions and circumstances, which surround each par-

ticular case, including the extent and location of the property, its
accessibility to market, transportation facilities, cost of construc-
tion and equipment, if recent; adaptability to its purpose, and
every element, which will have an influence in appreciating or
depreciating its value, and thus determine its "fair cash value,
estimated at what it would bring at a fair voluntary sale."

4.  Taxation—Equality of Burden.—Equality, as well as uniformity,
is a fundamental essential to the lawfulness of the imposition of
tax burdens in this state.

5.  Taxation—Constitutional Law.—Where the property of an indi-
vidual is valued for taxation at its "fair cash value," and all other
property in the taxing district is valued for one-half or one-third
of its "fair cash value," and a uniform rate of taxation is imposed
upon all, the constitutional essential of equality is violated, and
the individual is denied the equal protection of the laws.

6.  Taxation—Assessment—Review—Reduction.—Where, upon appeal
from the action of the board of supervisors, it appears that the
property of an individual is valued for taxation at its full value,
and the property of the other taxpayers in the taxing district has
been systematically assessed at one-third or one-half of its value,
the court being without power to otherwise produce equality in
the tax burdens, will order the assessment of the individual's
property to be reduced from its full value and assessed at the same
per centum of its value as at which the property of the other
taxpayers is assessed, although the statute provides, that all prop-
erty shall be assessed at its "fair cash value."

BLAKEY, QUIN & LEWIS for appellant.

R. D. JACKSON and H. K. BOURNE for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The assessor of Henry county assessed the real prop-
erty and personal property, other than distilled spirits,
of the Eminence Distillery Company for state and county
taxation, for the year 1916, at a total sum of $105,500.00.
Of this sum $5,500.00 was on account of personal prop-
erty, and the remainder on account of its real property.
The Distillery Company, claiming that the valuation of
its property was excessive and beyond its true value, ap-
plied for relief to the county board of supervisors, which
struck off from its assessment schedule the item of $5,-
500.00 for personal property, which left a valuation of its
real property for taxation at the sum of $100,000.00.
From the action of the board of supervisors, the distil-
lery company appealed to the quarterly court, but its ap-
peal was dismissed in that court, because of a failure of
its representatives to appear upon the calling of the case

for trial. It then appealed from that judgment to the circuit court, where a trial resulted, upon the merits of the controversy, the court adjudging, that the real property of the Distillery Company was of the fair "cash value, estimated at what it would bring, at a fair voluntary sale," in the sum of $75,000.00, and ordered that it be assessed at that sum for taxation as of the first day of September, 1915. The Distillery Company, yet, feeling aggrieved, at this judgment, appeal from it to this court.

These proceedings were authorized by section 4128, Kentucky Statutes, which is as follows, as far as pertinent to the question in hand:

"But any taxpayer, feeling himself aggrieved by the action of said board of supervisors, may appeal to the quarterly court within thirty days after the final adjournment of said board by filing with the judge of said court a certified copy, under the hand of the clerk of said board, of the action of said board." "And as to further appeals, he shall have the same rights as are now allowed by law in civil cases. It shall be the duty of the county attorney to appear and defend for the board."

The addition of the last two sentences to the above act, by an amendment to it, has changed the rule declared in Marion County Court, etc. v. Wilson, 20 R. 1193, and Cincinnati Bridge Co., 20 R. 1969, and an aggrieved taxpayer may now prosecute an appeal from an assessment of his real property for taxation by the assessor and board of supervisors, to the quarterly court, thence to the circuit court, and from thence to this court, as a litigant may do in any other civil case, although an appeal is denied to the Commonwealth or county. Commonwealth v. Big Sandy Co., 155 Ky. 412.

The statement filed by the appellant in the quarterly court, as the basis of its appeal, in addition to the certified action of the board of supervisors, alleges that the property was valued at greatly more than its fair cash value by the board of supervisors, in that it had fixed a value upon it, as of the first day of September, 1915, of $100,-000.00, when its fair cash value, estimated at the sum for which it would sell at a fair voluntary sale, would not exceed the sum of $50,000.00, and in addition thereto, that the uniform valuation of the real property in Henry county for county and state taxation, for the year 1916, was not in excess of a sum equal to sixty per centum of its value, and hence, that its property should be valued

for taxation at a like per centum of its value, or at the sum of $30,000.00,

(a) The soundness of the judgment of the circuit court, in adjudging that the fair cash value of the property, on the first day of September, 1915, was the sum of $75,000.00, will be first considered. The proof shows, without contradiction, that the property was in a first-class condition of repair for the purpose of manufacturing distilled spirits; that one of the brands of whiskey manufactured at the plant and called the Blue Ribbon had a great reputation for excellence and was much esteemed by the users of distilled spirits, but, the territory, in which it had its chief sale, was in the northwestern states, of the United States, nearly all of which had adopted laws, which prohibited the sale of intoxicating spirits, and which were to become effective on the first day of January, 1916. The lands owned by the appellant, company, consisted of thirty-seven acres, only a portion of which was suitable for agricultural purposes, and there was no other purpose to which they could be applied, other than for distillery purposes. The buildings were commodious, and are adapted for the purposes of distilling spirits, and included the main distillery building, with fermenter and other necessary attachments; six warehouses, with a capacity of several thousand barrels, each; a bottling house; a large cattle pen, with floors of concrete; a large concrete pond, for the purpose of gathering the rain water, which was used in the distillation of the spirits, and other necessary structures, including two small cottages, suitable for dwellings. The entire property had been assessed as of the first day of September, 1914, at a valuation of $100,000.00, but this seems to have been the result of certain litigation between the taxing authorities and the Distillery Company. The evidence was very contradictory as to the "fair cash value of the property, estimated at the price it would bring at a fair voluntary sale," on the first day of September, 1915. The witnesses offered by the appellant placed its value at a sum not exceeding from forty to fifty thousand dollars, and further testified, that it was unfit for any purpose, except that of the operation of a distillery, except that a portion of the lands could be used for agricultural purposes, but this would make necessary the removal of the buildings and the debris necessarily resulting from their demolition, and that for any purposes, other than distillery purposes,

the value of the property would not be in excess of $10,-000.00. The witnesses offered for the appellee concurred in an opinion, that the property was fairly of the value of from one hundred to one hundred and twenty-five thousand dollars for distillery purposes, and the superintendent of the company, while giving his opinion that the property would not exceed $50,000.00 in value, expresses the opinion that it probably could have been sold for $75,-000.00. It was, also, shown that the original cost of the property probably exceeded $250,000.00. It was, also, proven, that the owner, for some time previous to this assessment, had been willing to sell the property for the sum of $50,000.00, though it does not appear that any advertisement of this fact had been made or that the property had been offered for sale to any one for that sum. The reason given for the depreciation in the value of the property was the agitation in favor of laws prohibiting the manufacture and sale of distilled spirits, not only in the state of Kentucky, but in many other states of the United States, and the consensus of opinion having molded, that, within a short time, the manufacture and sale of distilled spirits, in the state of Kentucky, would be prohibited by law, which would necessitate the abandonment of the property, in controversy, for the purposes for which it was used, and for which the buildings had been erected. It is not demonstrated, that situated where the property is, and its character, it can be profitably devoted to any enterprise, other than the manufacture of distilled spirits. It is evident, that a number of the witnesses, who testified for both appellant and for the appellees, had very little knowledge of the value of a plant, such as is in controversy, and the reasons given for their opinions, as to its value, are far from satisfactory, while others of the witnesses, who exhibit the greatest knowledge of the value of such property, are servants or connected with the appellant, Company, and it might be considered that their judgment, as to its value, was influenced by partisanship for the appellant. It is, furthermore, apparent, that any opinion as to the value of this property must be largely speculative, as its value, at the time at which it should be estimated, is largely dependent upon political conditions; the probability of the manufacture of distilled spirits being prohibited, at an early date, and the use for which the property thereafter might be desired for any other purpose, and to what other purpose

it could be profitably employed, situated as it is, with reference to population and transportation. There are various definitions of the term, ''fair cash value,'' as used in section 172, of the constitution, and section 4020, Kentucky Statutes, growing out of the various adjudications of the courts in various states, as this term appears in the taxing laws of many states or words having the same meaning and intendment. The constitution and law makers, however, have defined its meaning as applied to assessment of property for taxation in this state by the further provisions of the sections, *supra*. They provide, that in arriving at the ''fair cash value'' of property for taxation purposes, that it shall ''be estimated at the price the property would bring at a fair voluntary sale.'' This excludes the idea of estimating the value of the property at such a price as it would bring at a forced or involuntary sale, but it makes necessary the contemplation for the sale provided for, the willingness of the owner to sell and the presence of one desiring to buy, and in estimating its value such conditions must be contemplated. Where articles of property are of common use, and where sales of such are being continuously made, it is easy to arrive at the fair cash value of articles of similar character by comparison with the values, which the articles sold, brought at fair voluntary sales, but it is apparent, that in the case of a modern plant for the distillation of spirituous liquors, it is difficult to determine the value, because of infrequency of sales of such species of property, the limited number of persons who have the financial ability to become purchasers, and the small number of such plants, in comparison with many other species of property, and the dissimilarity in the size and equipment of the various plants. Their values are not and can not be matters of knowledge within the grasp of many persons. In such cases, the assessors, as well as all other persons having taxing authority, in arriving at the fair cash value of the property, must necessarily take into consideration the conditions and circumstances, which surround each particular case, including the extent and location of the property, its accessibility to market, transportation facilities, cost of equipment and construction, if recent; its adaptibility for its purpose, and every element, which will have an influence in appreciating or depreciating its value, and thus with the best light attainable, determine its fair cash value, as contemplated by

the constitution and statutes. Coal & Iron Co. v. County Commissioners, 229 Pa. 460; L. & T. R. & S. S. Co. v. Board of Reviewers, 41 La. 460; Board of Assessors v. Central R. Co., 4 Atl. 578, 607; Bradley v. Hooker, 175 Mass. 145; New York State v. Barker, 179 U. S. 285; National Bank of Commerce v. New Bedford, 175 Mass. 261. Taking into consideration all of the conditions and circumstances in evidence, and giving that consideration to the opinion of the circuit judge, to which it is justly entitled, from his acquaintance with the witnesses, and their respective degrees of intelligence and probity and means of information, there appears to be no reason for disturbing his judgment to the effect, that the property, upon the first day of September, 1915, was of the fair cash value of $75,000.00, although it is difficult to separate the conditions then existing from those of the present.

(b)   The second contention of appellant is, that $75,-000.00 is an excessive assessment of its property, because, if it should be assessed at such sum for taxation, although it might be its fair cash value, that the remaining property in the county being assessed for taxation at only sixty per centum of its fair cash value or less, would result in an unconstitutional discrimination against the property of the appellant. All of the witnesses, including the county assessor, agree that real property in Henry county was uniformly and systematically valued and assessed by the assessor and the county board of supervisors for taxation purposes, for the year 1916, at a sum, which would not exceed sixty per centum of its fair cash value, estimated at the price it would bring at a fair voluntary sale, and that such had been the uniform practice and custom with the assessing authorities in the county for a long time theretofore. In fact, much of the evidence tends to prove that the property in the county was uniformly and systematically valued and assessed for taxation at a per centum of its value much less then sixty per centum, as alleged by appellant. Hence, the action of the assessor and the board of supervisors with reference to all other property in the county and the judgment of the court, with reference to appellant's property, presents the following state of case. The judgment of the circuit court was, that the fair cash value of the appellant's property, estimated at the price it would bring at a fair voluntary sale, as of the first day of September, 1915, was $75,000.00, and directed that it be assessed at that

sum for taxation for all purposes, while all of the other property in the county, for the same year, and for the same purposes, is assessed, not at its fair cash value, but at only sixty per centum of it or less. The same rate of taxation for state, county, roads, schools, and all other purposes is imposed upon the property of appellant as upon the other property in the county. Sections 171, 172. and 174, of the constitution, so far as they bear upon the question under consideration, are as follows: .

Section 171: ''The General Assembly shall provide by law an annual tax, which with other resources shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected for public purposes, only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws.''

Section 172: ''All property not exempted from taxation by this constitution shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale.'' . . .

Section 174: ''All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by this constitution;'' . . .

These sections of the constitution not only require that, the rate of taxation upon all property shall be uniform, but it just as emphatically demands and requires that the burden of taxation upon all property shall be equal, that is, as in the language of section 174, *supra*, ''It shall be taxed in proportion to its value.'' In order that taxes levied shall be lawful and have the sanction of the constitution, it is essential that, the burden which it imposes shall have the necessary virtue of equality, as that it shall be uniform. Spaulding, Tax Collector, v. Hill, 86 Ky. 656; Holzhauer v. City of Newport, 94 Ky. 396; Hager v. Walker, etc., 128 Ky. 1. The essential of equality in taxation was one of the fundamental rules of taxation in this state before the adoption of the present constitution, and the constitutional requirement has only emphasized the principle, theretofore, followed, in the levying of all taxes. Lexington v. McQuillan, 9 Dana, 513; Howell v. Bristol, 8 Bush 493; Preston v. Roberts, 12 Bush 570; Pearson v. Zabel, 78 Ky. 170; Walton v. Riley, 85 Ky. 413; Marshall v. Donovan, 10 Bush 691; Bullitt v. City of Paducah, 8 R. 870; Smith v. Louisville, 9 R.

779; Rankin v. City of Henderson, 9 R. 861; Simrall v. City of Covington, 12 R. 404; Schuster v. City of Louisville, 89 S. W. 689; 28 R. 588.

Where the same rate of taxation, per hundred, in value is imposed upon all property, and the property owned by one individual is valued for taxation, at its full value, while the property of all others is valued by the assessing authorities at fifty or sixty per centum of its value, argument is not required to demonstrate that the individual, whose property is assessed at its full value, suffers an unlawful discrimination, and that the constitutional essential of equality is violated, in that such individual is required to bear an unjust proportion of the tax burdens. We do not pretend that an absolute equality is essential to the validity of a tax assessment. The experience of all time has conclusively demonstrated, that absolute equality can not be attained. A contention that absolute equality could be attained or that such is necessary would be the mere musing of a dreamer. What the constitution and statute contemplates is a practical equality as near as may be. If the assessing authorities would comply with the constitution and statutes upon the subject, practical equality would be the result. The statute requires the assessor and the board of supervisors of a county to assess the property at its ''fair cash value, estimated at the price it would bring at a fair voluntary sale.'' If this were the result of their labors, then when the state board of equalization should equalize the assessments between all of the counties, each of which is considered as the unit of taxation, practical equality in taxation would necessarily result. If the property of the appellant had been assessed and equalized for taxation at sixty per centum of its fair cash value, as the other property in the county was, then the action of the state board of equalization, if it should raise the assessment of the property in the county, to its fair cash value, would establish equality between all the taxpayers, but with the property of the appellant assessed at its full value, and the other property in the county assessed at sixty per centum of its value, any action taken by the board of equalization, in its attempt to equalize the assessments between the various counties of the state, would still leave the appellant's property discriminated against, as the state board of equalization can only act upon the property of a county, as a whole.

This question was under consideration in Randell v. City of Bridgeport, 63 Conn. 321, where the Connecticutt Supreme Court of Errors said:

"There are two ways in which a taxpayer may be wronged in levying taxes. An assessment may conform. to the statute generally, and the individual may be assessed in excess of the statutory requirement. A wrong of that description is easily redressed. But when the town disregards the statutes and establishes a rule of its own, assessing the property at one-half of its actual value, and then assessing an individual at the full value of his property, while the injury is the same, the application of the remedy becomes more complicated. Practically the only way to redress the wrong is to reduce the assessment, and' that makes the court seem to disregard the statute; while, if the wrong is not redressed, there is a denial of justice; and the court practically ignores the statute giving an aggrieved party an appeal, and practically ignores the statute, which provides that 'said court shall have power to grant such relief as shall to justice and equity appertain.'. . . Under the circumstances, we do not hesitate to choose the former and to redress the wrong. We are not without precedents for this. Choheco Co. v. Stafford, 51 N. Hamp. 455; Manchester Mills v. Manchester, 58 N. Hamp. 38.''

The constitution of Ohio provides, that laws shall be passed, taxing by a uniform rule, all moneys, credits, etc., and, also, all the real and personal property according to its "true value in money." In Exchange Bank of Columbus v. Hines, 3 Ohio St. 15, as quoted in Cummins v. National Bank, 101 U. S. 153, the court said:

"Taxing by a uniform rule requires uniformity, not only in the rate of taxation, but, also, uniformity in the mode of assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation, and this equality of burden can not exist without uniformity in the mode of assesment, as well as in the rate of taxation. . . . But uniformity in the rule required' by the constitution does not stop here. It must be extended to all property subject to taxation, so that all property must be taxed alike, equally, which is taxing by a uniform rule."

In Bureau County v. R. R. Co., 44 Ill. 229, the court said:

"The rule of uniformity of taxation prescribed by the constitution requires that one person shall not be compelled to pay a greater proportion of the taxes according to the value of his property than another."

The justice of this rule is so self-evident, that no court, so far as we know, has ever held to the contrary, under any constitution or statute, which prescribes uniformity and equality in laying the tax burdens. In the instant case, the facts being undisputed, that the property of appellant has been discriminated against, as heretofore stated, the only question left for determination is, what remedy shall be applied to redress the grievance. Previous to the enactment of the act of March 15, 1894, permitting an appeal by an aggrieved taxpayer from the assessment made by the board of supervisors to the county judge, it was held by this court in Ward v. Beale, 91 Ky. 60, that there was no power to correct an assessment made upon property after the board of supervisors had acted upon it, and after the enactment of the act of March 15, 1894, it was held in Wilson v. Marion county, *supra;* Royer Wheel Co. v. Taylor County, etc., 104 Ky. 741, that the only remedy, which an aggrieved taxpayer had on account of an excessive valuation of his property for taxation was an appeal to the county judge from the action of the board of supervisors. Hence, under the present statute, 4128, *supra,* his remedy for an excessive valuation would be confined to the appeals therein provided for. This remedy the appellant has, in the present instance, invoked. It is very clear, that the circuit court and this court is authorized to revise an assessment and to reduce an assessment of property to its fair cash value, which the circuit court did, but should it have gone, further, and given the appellant complete relief, and remedied the wrong, which was done it, by reducing the amount at which the property should be valued for taxation to a sum less than its fair cash value, so as to have established equality between it and other taxpayers, upon the ground, that the assessment made of the property, at its "fair cash value" was a violation of the law, as to the constitutional essential of equality, and a denial to the appellant of the equal protection of the laws secured to it by article 1, of the 14th amendment of the federal constitution. Of course the board of supervisors could have remedied the inequality between the assessment of appellant and that of other taxpayers, by increasing the as-

sessment of the property of the other taxpayers, in the county, to its "fair cash value." This, however, it did not do. The quarterly court, circuit court and this court are without necessary powers to effect the remedy in that way. Such a remedy the appellant can not make effective, and the result is, that it is no remedy at all, as to it. The only practical remedy is to reduce the assessment of appellant's property to sixty per centum of its value, and thus make the burden, to be borne by it, equal to that borne by other taxpayers. The circuit court was apparently confronted by the dilemma of either denying to the appellant the equal protection of the laws and denying to it relief from any injury suffered by it, which arose from a violation of the constitution and statutes of this state by the taxing authorities, or else to apparently violate the same itself by directing an assessment of the property at a sum less than its fair cash value, at which sum both the constitution and statute require all property to be assessed for taxation. Other courts, in various jurisdictions have been confronted with the same perplexing question, as in Randell v. City of Bridgeport, *supra;* Cocheco Co. v. Stafford, *supra;* Manchester Mills v. Manchester, *supra;* Cummins v. National Bank, 101 U. S. 153; *Ex Parte* Fort Smith Bridge Co., 62 Ark. 461; Bureau County v. R. R. Co., 44 Ill. 229; C. B. & Q. Ry. Co. v. Commissioners, 54 Kan. 781; Lively v. M. T. & K. Ry. Co., 102 Texas 545; Taylor-v. L. & N. R. R. Co., 88 Fed. 365; Dundee Mortgage Trust Co. v. Parrish, 24 Fed. 197, and the late cases of Greene, etc. v. L. & I. R. R. Co., 244 U. S. 499; Greene v. Louisville Railway Co., 244 U. S. 499; L. & N. R. R. Co. v. Greene, 244 U. S. 522; I. C. R. R. Co. v. Greene, 244 U. S. 555. In the greater number of these cases, the method adopted to remedy the grievance was by an application to a court of equity for an injunction against the taxing authorities. In all of the above cases it was held, that, although the law, of the state in which they arose, provided, that the property should be assessed for taxation at its "fair cash value," "true value" or "actual value," that where an individual had been discriminated against by assessing his property for taxation at its "fair cash value," "actual value" or "true value," and the other property within the taxing district was assessed at one-fourth or one-half or two-thirds of its value, that relief would be afforded the individual by enjoining the collection of so much of the taxes assessed as were

more than the complaining party's just proportion of taxes, after assessing his property at the same per centum of its value as the other property in the district; or where an appeal lay from the action of the taxing authorities, by reducing the valuation of his property for taxation to the same proportion of its value as the other property had been valued for taxation. Discussing the question under consideration, in Greene v. Louisville & Interurban Railway Co., *supra,* the court said:

"It is equally plain that it makes no difference what basis of valuation—that is what percentage of full value may be adopted, provided, it be applied to all alike. The adoption of full value has no different effect in distributing the burden than would be gained by adopting seventy-five per cent. or fifty per cent. or even ten per cent. as the basis, so long as either was applied uniformly. The only difference would be, that supposing the requirements of the treasury remained constant, the rate of taxation would have to be increased as the percentage of valuation was reduced. Therefore, the principal, if not the sole reason for adopting "fair cash value" as the standard for valuation is, as a convenient means to an end—the end being equal taxation, but if the standard be systematically departed from with respect to certain classes of property, while applied to all other property, it does not serve, but frustrates the very object it was designed to accomplish. It follows that the duty to assess at full value can not be supreme in all cases, but must yield where necessary to avoid defeating its own purpose."

In Taylor v. L. & N. R. R. Co., 88 Fed. 350, discussing the same question, the court said:

"The court is placed in a dilemma, from which it can only escape by taking that path, which, while it would involve a nominal departure from the letter of the law, does injury to no one and secures that uniformity of tax burden, which was the sole end of the constitution. To hold otherwise is to make the restrictions of the constitution instruments for defeating the very purpose that they were intended to subserve. It is to stick in the bark, and to be blind to the substance of things. It is to sacrifice, justice to its incident."

Ex Parte Fort Smith, etc., Bridge Co., *supra,* the statute of the state required that the property should be assessed at its "true market value," in money. The complaining party's property was assessed at its market

value, but the other property in the taxing district was assessed at only fifty per cent. of its value. The court ordered the assessment reduced one-half, as it had no power to have the assessment of the other property in the county raised to its market value. The court said:

"It may be said, that in as much as its property was not assessed above its true value, it had no right to complain, but this is not true. It had the right to demand that no unequal burden be imposed upon it by taxation."

It will be observed, that in the scheme of taxation provided for by our constitution and by the statutes made for the purpose of carrying its provisions into effect, the chief fundamental essential of all the laws, which we have upon the subject of taxation, is, that the burden of taxation shall be borne by all alike, or in other words, equality in the imposition of such burdens shall exist. It might be insisted, that the circuit court and this court, under section 4128, *supra*, is simply an assessor, and that relief from any inequalities of taxation, such as are presented in the instant case, could only be secured by some other mode or some other remedy, but the statute provides that an appeal may lie when any taxpayer feels himself aggrieved by the action of the board of supervisors on account of any failure of duty on their part, and, besides, it is, also, fruitless to take two bites at one cherry. Hence, the circuit court was in error when, after it found the "fair cash value" of the property of appellant to be of the value of $75,000.00, in failing to reduce such valuation for taxation to sixty per centum of its value, or $45,000.00, so as to cause it to be assessed for taxation upon the same percentage of value as the other property in the county was assessed for taxation, as it had no other means of redressing the grievance of which appellant justly complained, and such action could result in injury to no one.

It is therefore ordered that the judgment be reversed and cause remanded, with directions to proceed in accordance with this opinion.