## Board of Supervisors of Letcher County v. Swift Coal & Timber Company.

(Decided March 13, 1931.)

J. W. CAMMACK, Attorney General, S. H. BROWN, Assistant Attorney General, H. L. MOORE, County Attorney, and ASTOR HOGG for appellant.

D. I. DAY and B. P. WOOTTON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

This is an appeal prosecuted by the taxing authorities of Letcher county from a judgment of the circuit court of that county reducing the assessment for taxation of the property of the Swift Coal & Timber Company. This company listed its property at $176,331. The county tax commissioner listed it at $267,283. The board of tax supervisors raised it to $296,898.

The Swift Coal & Timber Company appealed to the quarterly court under section 4128, Ky. Stats.; where the action of the board of tax supervisors was upheld. It then appealed to the circuit court, and that court reduced the assessment to $274,779. From that judgment this appeal is prosecuted.

Only one thing is involved on this appeal, and that is the correctness of the valuation placed by the court upon the coal in situ owned by the Swift Coal & Timber Company, and that question relates solely to the method by which the taxing authorities of this county arrived at its valuation. Coal is the chief element in the value of the land in this county.

The value of coal in situ depends upon its accessibility to transportation, the nature of the subjacent and superjacent strata, the amount of the latter, the number, thickness, and quality of the seams, and other matters which would be noted by an expert but which we need not consider here. In like manner the nature of the surface and its value varies, and the timber is better and more abundant in some parts of the county than in others. These matters are to some extent touched upon in Letcher County v. State Tax Commission, 211 Ky. 609, 277 S. W. 988.

To enable its taxing authorities to act intelligently and justly in this matter, Letcher county in 1923 appointed a commission to make a study of the county and to divide it into zones for the purpose of taxation.

That commission divided the county into 30 zones or districts, endeavoring to so shape these zones that all the coal in a district would be of a uniform quality, thickness, and value. Some attention may have been given to the surface and timber, but the shape and extent of these zones were practically, if not entirely, determined by the coal.

Letcher county is hilly and mountainous. Some of these hills and mountains have been formed by erosion and others by violent terrestrial movements in ancient geological times. As a result, the coal seams have been broken and disturbed, and they are somewhat interrupted and irregular, and in some places are entirely absent. These commissioners in their report stated the percentage of each zone that was underlain with coal, for example, the commission said "zone RA" was 60 per cent. underlain with coal.

The Swift Coal & Timber Company owns in this zone 1,286 acres of land in fee, of which 323 acres is underlain with coal, and it owns the mineral rights appurtenant to 946 acres that has 60 acres upon which there is coal. Thus in these two tracts it has 2,233 acres of land, but only 383 acres of coal. There seems to be no controversy about anything except the coal. The Swift Company in its list put in 383 acres of coal, but at just what price per acre it valued this coal does not appear. The board of tax supervisors proceeded this way: It found 60 per cent. of 2,233 was 1,339, and it charged the Swift Company with 1,339 acres of coal at $25 per acre, or $33,480. The circuit court in its judgment charged the Swift Company with 383 acres of coal at $25 per acre, or $9,575. The position of the board of tax supervisors is that the Swift Company owns the coal rights under 2,233 acres of land in zone RA which zone its commissioners have reported, is to the extent of 60 per cent. underlain with coal, that it has not the means, time, or disposition to survey the coal under each taxpayer's property and determine just exactly what each man has, and that it will get the same revenue in this way that it would by a careful survey of each taxpayer's property in the zone, and that no substantial injustice is done to any taxpayer by this process, and the plan it has adopted is more convenient to it.

The position of the Swift Company is that it has accurately surveyed its property and the coal seams

upon it, and that it has only 383 acres of coal in zone RA, and that, while the plan adopted may be more convenient to the board, it does an injustice to the Swift Company. It admits that 60 per cent. of this zone is underlain with coal, yet its 2,233 acres has only 383 acres of coal upon it, or only 17 per cent.

The question just narrows down to this, Can a taxpayer whose property lies in zone RA be assessed for taxation with coal under 60 per cent. of his property whether it is there or not, or can such taxpayer survey his property and show accurately just how much coal he has and thus limit his assessment for coal to what land he owns that actually has coal upon it? The trial court found in favor of the Swift Company and against the board. The court's finding was correct.

We are perfectly familiar with the rule that a taxpayer must list his own property at its fair cash value and cannot better his position by showing another taxpayer is assessed too little; yet to show the mischief that can be wrought by the plan adopted by the board here we will cite the case of an adjoining taxpayer to the Swift Company, under whose land in this same zone the coal is actually 60 per cent. and compare the result.

| The Swift Company. | The neighbor. |
|---|---|
| Surface, 2,233 acres. | Surface, 2,153 acres. |
| Actual coal, 383 acres. | Actual coal, 1,291 acres. |
| Assessed with 1,339 acres. | Assessed with 1,291 acres. |
| Coal assessed at $33,480. | Coal assessed at $32,375. |

Thus, with 908 acres less coal, the Swift Company is assessed for coal $1,105 more than its neighbor. The neighbor with about 3½ times as much coal as Swift Company, is assessed for taxation on its coal over a thousand dollars less. That simply cannot be right. If Swift's assessment is right, the neighbor's assessment should be $112,836, and, if the neighbor's assessment is right, Swift's assessment should be $9,581. Perhaps neither assessment is right, but that is not our question. To state this question another way, a city might decide the lots on a certain street are worth $50 per front foot. Eighty per cent. of them have improvements on them worth $5,000 therefore it could under a similar rule assess each lot on that street $4,000 for improvements. Would any reasonable man say a lot owner could not prove his lot was vacant and be relieved of the $4,000

assessed against it for improvements? There is no difference in principle.

The appellees say this question has already been decided in Swift Coal & Timber Co. v. Board of Tax Supervisors of Letcher County, 223 Ky. 461, 3 S. W. (2d) 1067, and that that is the law of the case. Not so, this is not a second appeal. That opinion was dealing with the assessment of 1926 and this one with that of 1927. In Swift Coal & Timber Co. v. Board of Supervisors, 223 Ky. 461, 3 S. W. (2d) 1067, we held the evidence for the coal company was not sufficient to overcome the action of the board, but it fortified itself better in this case, and its evidence in this case does overcome it.

In Ohio County Board of Supervisors v. Green River Coal Mining Co., 199 Ky. 843, 252 S. W. 109, we approved the action of the circuit court in excluding from assessment, in a tract of 9,660 acres, 2,950 acres that was shown to have no coal upon it. That case cannot be distinguished from this one.

The board put in evidence a copy of one of the deeds by which the Swift Coal & Timber Company acquired this property, and that shows it owns not only the coal but the oil, gases, mineral waters, clay, iron ores. etc., on this land, and it may be contended that these justify the assessment even if it had no coal. It owns these things, and, if there had been evidence they were of any value, they should be listed for taxation, but there is not a line of evidence regarding their value. All of this controversy centers around this coal and the method adopted for its assessment.

The brief for appellant practically amounts to a short statement of the issues, followed by citations of the following cases: Letcher County Fiscal Court v. State Tax Commission, 211 Ky. 609, 277 S. W. 988, 991; Swift Coal & Timber Co. v. Board of Supervisors, 223 Ky. 462. 3 S. W. (2d) 1067; Ray v. Armstrong, 140 Ky. 800, 131 S. W. 1039; Eminence Dist. Co. v. Henry County, 178 Ky. 811, 200 S. W. 347.

From the opinion in the first of these cases, this quotation is made: "Exactitude is not to be expected in tax matters. That is a Utopia which has never been and probably never will be reached." We may never succeed in reaching Utopia, but certainly we will not do so by deliberately turning our backs upon it and marching in the opposite direction.

We have only dealt with zone RA, but what we have said about that zone applies to the other zones. The trial court considered these zones in detail, and lowered the assessment against the Swift Coal & Timber Company $21,119, and its judgment is affirmed.

The whole court sitting; Judge LOGAN dissenting.