## Kentucky River Coal Corporation v. Knott County et al.

## Beaver Creek Consol. Coal Co. v. Knott County Board of Sup'rs.

(Decided Nov. 15, 1932.)

P. T. WHEELER, JESSE MORGAN, J. E. JOHNSON, Jr., H. H. SMITH, and B. F. COMBS for appellants.

J. E. PERKINS and C. P. STEPHENS for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming in part and Reversing in Part.

The five appeals are by the Kentucky River Coal Corporation and the Beaver Creek Consolidated Coal Company, as owner, and three of its lessees, who are concerned in a certain part of its taxes, from judgments assessing their respective properties in Knott county for the years 1929 and 1930. The objections are based upon excessive valuations and inequality or discrimination.

1. In the suit involving the assessment of the Kentucky River Coal Corporation as of July 1, 1928, there is a cross-appeal founded upon the order overruling the plea in abatement of the county and board of supervisors and their motion to dismiss the appeal from the quarterly court. To sustain the plea it was

claimed that the appeal to the circuit court was premature and based upon a void judgment. It appears that on May 21, 1929, the judge of the quarterly court announced his conclusions of the trial on the appeal from the assessment of the tax supervisors and directed the judgment assessments. The judgment was prepared by counsel showing the court's assessment to be $336,375, and it was entered on the order book. On June 13, 1929, a copy of that judgment was procured and filed in the circuit court as the basis of an appeal. It was and is contended by the county that the judgment is void because never approved or signed by the judge of the quarterly court and that the real and only judgment in the case was rendered on December 16, 1929, or six months after the appeal to the circuit court was perfected. The coal corporation filed in the quarterly court a motion to set aside the order of December 16, 1929, as void, which, being overruled, was appealed to the circuit court. The grounds of this motion were that the case had been finally disposed of at the May term, 1929; the case was not docketed and did not stand for orders; that in fact the case was not tried and disposed of and no order was entered at the November term of the quarterly court (which included December 16th), although the judgment purported to be dated and entered during the term; that it was in fact written, entered, and signed on January 6, 1930, at a time when the judge was not sitting as the judge of the quarterly court and when no court was in session; and finally that the coal corporation was without notice of any purpose to try the case or enter the judgment.

E. C. Moore, then judge of the quarterly court, testified on the hearing of these motions that some time after the May judgment had been placed on the order book he discovered it when he went to sign the orders for that term, and, noting that it was not in accord with his decision, he crossed it out. He said that the order had been entered without being shown to him and without his approval. In the latter part of December, 1929, or between January 1st and 6th, 1930, he signed the orders for the May term, which was after the judgment had been lined out. He then secured a lawyer to prepare a judgment in the case in accordance with his views, placing the assessment at $614,683 instead of $336,375.00, and that it was entered and signed by him

on January 6, 1930, the day his term of office expired, but before his successor qualified.

It seems sufficient to say that the preponderance and weight of the evidence is that the orders for the May term were properly signed and the judgment had become final when the judge undertook to set it aside by mutilation of the record, and that other grounds of attack upon the December order are proven conclusively. The circuit court properly regarded the May judgment as valid. Montgomery v. Viers, 130 Ky. 694, 114 S. W. 251; May v. Duncan, 157 Ky. 586, 163 S. W. 1089; Leslie County v. Eversole, 222 Ky. 793, 2 S. W. (2d) 644; McCaskey Register Company v. Cawood, 222 Ky. 811, 2 S. W. (2d) 639; Stevens v. Young, 180 Ky. 154, 202 S. W. 481; Kentucky Statutes, secs. 1050, 1055 and 1060.

2. It is contended that there was no appeal from the action of the Board of Supervisors assessing the unleased property of the Beaver Creek Consolidated Coal Company for 1930 through failure to file a copy of the order in the quarterly court; and, further, that in the same case there was no valid appeal from the judgment of the quarterly court to the circuit court because of a failure to file a copy of the judgment. These claims are founded principally upon the fact that some of the papers in that case could not be found. It appears that a few days before the trial in the circuit court the absence of the papers was discovered and the county supervisors filed a motion to dismiss the appeal upon the ground that it had not been prosecuted according to law. The appellant then moved to supply the record and tendered copies of the missing documents. The motions were not acted upon and the case proceeded to trial and disposition as if the record had been supplied and the appeal had been regularly taken. The loss of the papers and confusion is accounted for by the fact that the courthouse had burned and the clerks of both courts had improvised offices in a storehouse without convenient accommodations, and about the time of the filing of the appeal to the circuit court there had been a change in the personnel of the two offices. Aside from the fact that the evidence tends strongly to support the contentions of the appellant, the appellees waived any technical ground they may have had by failing to have the trial court rule upon their motion to dismiss the case.

Upon the two cross-appeals the judgments must be affirmed in the respect indicated.

3. The pleadings and judgments in the five cases were separate, but the cases were consolidated for purposes of trial and are appealed upon the same transcript of evidence and joined here.

The basis of assessment for taxation as prescribed by the Constitution (sections 172, 174; and the Statutes, section 4020) is "its fair cash value, estimated at the price it would bring at a fair voluntary sale." The importance of observing this formula is accentuated by the constitutional provision that any officer who shall commit a willful error in respect thereto shall be guilty of a misdemeanor and upon conviction shall forfeit his office. Uniformity and equality are likewise required. Constitution, sections 171, 174. The generality of the basis naturally results in some loose joints in the machinery. So it has often been said that exactness is not to be expected in tax matters. In an opinion dealing with the assessments for 1928 of one of these appellants, some of the rules to be regarded are collated. See Kentucky River Coal Corporation v. Knott County, 239 Ky. 18, 39 S. W. (2d) 190. It is not necessary to quote from the authorities or to restate the pertinent rules for ascertaining tax value of property. For those rules and their application reference is made to Eminence Distillery Company v. Henry County Board of Supervisors, 178 Ky. 811, 200 S. W. 347; Hillman Land & Iron Company v. Commonwealth, 194 Ky. 599, 239 S. W. 1041; Board of Supervisors of Letcher County v. Swift Coal & Timber Company, 238 Ky. 21, 36 S. W. (2d) 664; Swift Coal & Timber Co. v. Board of Supervisors, 223 Ky. 461, 3 S. W. (2d) 1067; Letcher County Fiscal Court v. State Tax Commission, 211 Ky. 609, 277 S. W. 988. These and other cases herein cited will lead the interested reader in his study. In Ohio County Board of Supervisors v. Green River Coal Mining Company, 199 Ky. 844, 252 S. W. 109, it was held that in taxing coal lands the parts having no mineable and merchantable minerals on them should be excluded in making the assessment as mineral-bearing land. In Kentucky River Coal Corporation v. Knott County, supra, the listing and assessment of non-bearing and mined-out acreage at $1 was approved. We may also take notice of a recent opinion of the Supreme Court, Cumberland Coal Company v. Board of Revision of Tax Assessments in

Greene County, Pa., 284 U. S. 23, 52 S. Ct. 48, 76 L. Ed. 146. This case dealt with the constitutional right of a taxpayer to equality with others owning coal property of the same character.

It appears in the present cases that these legal bases and rules for assessment were not adhered to. A member of the Board of Supervisors making the assessments testified, "We didn't attempt to fix the taxable values of these lands under the present condition that the country is in now. Our values were fixed at what this property should be worth under normal conditions when there would be a market for it and when it would sell." Perhaps it was optimism and not caprice that induced, for example, a total assessment of the Kentucky River Coal Corporation's property for 1929 at $1,078,060 as compared with $321,739 held by the courts to be a fair taxable value for 1928, and followed by a degree of pessimism that led to the value of $484,210 for 1930. The difference in the character of the property each year was negligible.

But we are not particularly concerned with the values placed upon the property by the assessing officers, for the subject of review is the fairness of the assessments ordered to be made by the courts, or rather the circuit court, which adopted the values fixed by the quarterly court. We are to determine whether those values are in accord with the constitutional and statutory requirements. To determine that we must be controlled altogether by a consideration of the evidence found in the record and not by the motives of the parties, statements in briefs, or other extraneous circumstances or conditions.

The two appellants most affected, namely the Kentucky River Coal Corporation and Beaver Creek Consolidated Coal Company, are holding companies and do not operate any of their properties. The former owns mineral rights and land in fee amounting to about 24,000 acres, and the latter to about 27,000 acres in Knott county. Those properties are classed as coal bearing and as barren, that is, where the coal had been removed or there was never any coal on them. They are also to be classed as lands leased for development, or active, and as unleased or dormant. The latter are termed in the record also as "outlying lands," because generally removed from transportation facilities and are being held for future development. The companies

are not taxable with surface values of the land in which they own only the mineral rights, a segregation being recognized, but, as they realize, they are liable for taxes on both the mineral and surface estates where they own the land in fee. Moss v. Board of Supervisors, 203 Ky. 813, 263 S. W. 368.

There is no possibility of deriving any revenue in the near future from much of the dormant and outlying coal. It must be remembered that in taxing mineral land an effort must be made to assess the property at its present value rather than its ultimate productive worth. In doing this there should be regarded the fact that the land contains undeveloped minerals in such quantity as to enhance the value over its mere surface worth. In a measure this involves the factor of a prospective value. Letcher County Fiscal Court v. State Tax Commission, supra; Washington Union Coal Company v. Thurston County, 105 Wash. 208, 177 P. 774, 777, 2 A. L. R. 1546. It also involves the factor of exhaustion which comes through development. Other considerations are stated in Board of Supervisors of Letcher County v. Swift Coal & Timber Company, 238 Ky. 21, 36 S. W. (2d) 664.

(1) In the matter of the Kentucky River Coal Company assessments for 1929.

(a) For its leased property the court accepted the acreages submitted and the values of the noncoal land at $1 an acre, and the surface at $5 an acre. But it reduced the values of the coal bearing land from $50 to $35 an acre except that of the Hardy-Burlingham Mineral Company's lease, which was placed at $75 an acre by both the company and the court. The result was a reduction in the whole assessment of the land under lease (7,922 acres) from $170,112 to $142,627.

(b) The outlying or unleased property was listed at $10 an acre for coal bearing lands, at $1 an acre for the noncoal land, and at $5 an acre for the surface of that owned in fee. The total listed value was $90,290. The court fixed the values of the mineral rights (9,238 acres) at from $10 to $20 an acre; the fee land (5,928 acres) at the same rates; and the timber on the land at $6,000. So far as the record discloses, no distinction was made by the court between coal bearing and noncoal lands in fixing the values. The judgment on this

item increased the assessment of the unleased property from $90,290 to $193,748, a raise of $103,458.

(a.b.) The result of the judgment was to raise the assessment for all property for 1929 from $260,402 to $336,375. This was an increase of $14,636 over the assessment of the same land for 1928 taxes, sustained by this court.

(2) In the matter of the Kentucky River Coal Company assessment for 1930.

(a) The company listed 9,449 acres of leased property, divided between that containing recoverable coal at $50 an acre, noncoal land at $1, and surface at $5 an acre. It amounted to $149,542. The judgment fixed the area at 9,266 acres, at a value of $279,540. In making that assessment the court made no distinction between coal bearing and noncoal land. It arbitrarily fixed the value of 500 acres in each operation at $75 an acre on the idea that so much land contiguous to the mine tipples was worth five times as much as that beyond that zone. At least that was the reason assigned by the Board of Tax Supervisors, whose values in this instance were adopted. The rest of the leased land was valued at $15 an acre regardless of its character or extent of title. The result was an increase of $129,998.

(b) The outlying or unleased property for this year was given in as being 15,303 acres, of which 5,938 were owned in fee. The values placed by the company were $10 per acre for coal bearing, $1 for noncoal bearing, and $5 for surface, an aggregate of $90,893. The judgment fixed the area at 15,403 acres and assessed it at from $8 to $20 an acre; and $6,000 for the timber. There was the same disregard for the distinction noted above. This amounted to $204,670, an increase of $113,777.

(a.b.) The result of this judgment was to raise the assessment for all property for 1930 from $240,435 to $484,210. This was an increase of $243,775 over the value listed, and of $147,835 above the 1929 value fixed in the same judgment for the same property. It is $162,471 more than the value for 1928, approved by this court.

(3) In the matter of the Beaver Creek Consolidated Coal Company assessments for 1930, the only

year involved. The values fixed by the Board of Supervisors were adopted by the court.

(a) There were listed as leased lands a total of 3,087 acres (of which 349 acres only are stated to be mined-out) at the valuation of $43,475. The judgment fixes the assessment at $136,335. The company listed coal bearing lands at $15 and $20, and the barren land at $1 per acre, but says there is much mined-out land included in the former listing. This judicial assessment was at the rate of $75 an acre for 500 acres of each lease, and $15 an acre for the balance. The inequity of this is shown in the instance of the Wells-Elkhorn Coal Company's lease which was shown to have only 403 acres of coal land.

There were other leased properties assessed which are not involved.

(b) The Beaver Creek Consolidated Coal Corporation listed as owner of outlying or unleased property 20,429 of mineral rights from $6 to $15 at an average of $7.54 per acre, aggregating $154,158. The judgment does not disclose the price per acre but puts a value of $306,435 upon these mineral rights. The company listed 603 acres owned in fee at $7,305. It was valued in the judgment at $10,590. The aggregate value of this unleased dormant property was placed by the company at $161,463 (an average of $7.68), and by the judgment at $15 an acre, a total of $317,025. As in the Kentucky River Coal Corp. Case no regard seems to have been had for the difference in the character of the property or of its ownership.

(a.b.) The result of the judgment against the Beaver Creek Consolidated Coal Company and its lessees, jointly, was to raise the assessment from $204,938 to $453,360, or more than 120 per cent.

The appeal of the Kentucky River Coal Corporation is only from the judgment fixing the values of their outlying land in 1929, but it appeals the entire judgment for 1930 taxes. The appeal of the Beaver Creek Company is from the entire assessment for 1930. The county prosecuted a cross-appeal from the judgment fixing the total assessment of the Kentucky River Consolidated Coal Company for 1929 at $336,375.

It is not denied that coal land values had been declining since 1920, and that, upon the assessing dates,

the coal business was greatly depressed, because of which many companies had been forced to suspend operation. There had been but few sales of this kind of property during recent periods. The appellants claim that the coal land market was affected by fear on the part of investors of the inimical attitude of the local taxing authorities, while the appellees claim that the stagnant market was due, principally, to the fact that the holding companies owned most of the land in the county and did not desire to part with any of it. Be that as it may, difficulty is encountered in applying the usual legal tests of taxable value by reason of this lethargic condition in the market and other factors considered in Letcher County Fiscal Court v. State Tax Commission, supra.

The evidence for the companies was presented through their officers and employees and by independent engineers and geologists, all of whom spoke as men having knowledge of their subject. Surveys and tests had been made of the property and from accurate data thus obtained, the witnesses described the areas with their different formations and mineral content. Local bankers and business men, who also displayed familiarity with the property and their values generally, testified in support of the company's officers that the listed values were not only fair, but in some instances exceeded the reasonable market values. That this is true in some instances is indicated by the fact that the trial court fixed values less than those listed for some of the property. Most of the property had been purchased at $2, $3, $5, $7, $10, and $15 per acre, with an average of around $6. It was shown the property has not been worth any more except during a brief period of inflation due to war conditions. In 1922 part of the land leased to the Hardy-Burlingham Mining Company had been bought for an average of $20 an acre. Other separate parcels containing good coal had been acquired at $50 and less. Save as to 40 acres, the gas and oil rights in all of the land of the Kentucky River Coal Corporation had been sold in 1926. All of the merchantable timber had been cut. Some land on Quicksand creek had been offered for sale at $5 an acre without success. About 35,000 acres of adjoining property of the same kind, of which 13,000 acres were in Knott county, had been sold by another company for $6 an acre, after it had offered to give the land to the company who had purchased the timber and the offer had

been rejected because it was not worth paying taxes on. The sale was made during an oil and gas boom in the country and the land was bought for the gas. It has little or no farming value  There is much evidence of a similar character to that related, as well as proof of comparative assessments. The evidence of the appellants evinces a purpose to be fair and a desire to appease the consuming zeal of the local authorities.

An analysis of the evidence introduced to sustain the raises made by the tax supervisors and the judgment of the quarterly court with the view of weighing its probative worth, based upon usual considerations, does not show the values placed upon the respective properties to be too low. It is rather the other way. True, there are several expressions of opinion, and some evidence of comparative assessments, but it was developed pretty well that the witnesses were comparing different classes of property in some instances and in others were not familiar with the properties compared. We can appreciate the difficulties under which the county authorities were laboring, such as the practical absence of sales of similar property, the ownership of such a large proportion of the county's lands by these and other coal companies, and insufficient information concerning the character of the far flung lines and vast holdings of the appellant companies. Those things have all been taken into consideration by us. The need of revenue is also made to appear; but, however necessary that may be, it does not justify an assessment of property beyond its value as fixed by statute.

A careful and rational survey of the entire record convinces the court that the values placed by the respective companies upon their lands for taxation purposes in their lists are fair and represent their proportionate share of the tax burdens. The evidence does not justify a raise in the active lands from $50 to $75 an acre nor of the outlying nonmineral land from $1 to $15 an acre.

4. As shown above, the court reduced values of certain leased coal land of the Kentucky River Coal Corporation for 1929 to $35 an acre, and there is a cross-appeal from that judgment.

The value placed by the company in its tax return was $50 an acre. The schedule of property and values do not constitute the tax assessment. It is evidence from which an assessment may be made. In the absence of mistake, the owner is ordinarily bound by his schedule. Cooley on Taxation, sec. 1086. It has been held that taxpayers are estopped from questioning such values which have been accepted as correct by the assessing officers. Pfeiffer v. City of San Antonio (Tex. Civ. App.) 195 S. W. 932; City of Tampa v. Mugge, 40 Fla. 326, 24 So. 489. But the contrary is held in Bowman v. Montcalm Circuit Judge, 129 Mich. 608, 89 N. W. 334, and U. S. Radiator Corporation v. Wayne County, 192 Mich. 449, 158 N. W. 1030, because the tax list is filed merely to assist the assessor in his valuations. See 10 R. C. L. 722. Cf. Clark County National Bank v. City of Winchester, 177 Ky. 532, 197 S. W. 1077, which considers the subject where there was a delayed claim of error in a tax schedule and the validity of an attempted relinquishment of taxes was involved. It is not necessary here to speak definitely upon the question, for the return is certainly a strong admission on the issue of value, where that is directly involved for tax purposes, and the presumption exists that it is a fair value. Davisworth v. Wright, 229 Ky. 572, 17 S. W. (2d) 756; Clark County National Bank v. City of Winchester, supra. And we do not regard the evidence in relation to the value of leased coal land for 1929 as sustaining the reduction from $50 to $35 an acre.

5. This court determined upon review, as is shown by the opinion cited above, that the valuations for 1928 taxes of the property of the appellant Kentucky River Coal Corporation adjudged by the trial court were fair. Whenever tax values have been judicially determined by the court of last resort, it ought to be made very clear that the property or conditions in the next succeeding years have materially changed before other values are placed upon the same property. The evidence in this case shows conclusively that the conditions did not warrant an increased assessment in either year.

The portions of the two judgments upon which the cross-appeal rest are affirmed, except that part of the judgment reducing the assessment of the leased property of the Kentucky River Coal Corporation for 1929, which is reversed that judgment may be entered correcting the assessment for that year as a whole.

834

Upon the direct appeals the respective judgments are reversed with directions to enter judgments fixing the values in accordance with the tax schedules submitted by the respective companies.

Judge Willis not sitting because of absence.