# Westova Gas Co. v. Knott County Board of Supervisors et al.

## Carbreath Gas Co. v. Same.

(Decided Dec. 6, 1932.)

GRANNIS BACH for appellants.
CLAUDE STEPHENS and J. E. PERKINS for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The appeals in these cases present for review the assessment of 13,000 acres of land for taxation against the Westova Gas Company for the year 1929, and the Carbreath Gas Company for the year 1930, by the board of supervisors of Knott county, Ky. The land was wild, mountainous, uncultivated, and unoccupied, except such small bottoms as lay on the small streams which traverse it. Before either the Westova Gas Company or the Carbreath Gas Company acquired title to it, the Breathitt Coal & Timber Company owned it and leased to the Fitch Oil & Gas Company all oil and gas rights thereon and thereunder. Also, anterior to the acquisition of the title by the Westova Gas Company and the Carbreath Gas Company, the Breathitt Coal & Timber Company sold and conveyed the timber standing and growing thereon, to the Dawkins Lumber Company. The deeds under which the Westova Gas Company and the Carbreath Gas Company owned the land conveyed it subject to a lease of the oil and gas. The Fitch Oil & Gas Company had drilled, for oil and gas, five holes, all of which were nonproducing and were abandoned. The Dawkins Lumber Company had cut and removed the timber, except beech and hickory and a few other kinds, before the land was conveyed to either of these two companies. A portion of the 13,000 acres was supposed to contain coal in paying quantities. No mining thereof had been done by any prior owners. The Breathitt Coal & Timber Corporation investigated and tested the land to determine if the coal was of such value as to warrant its mining. Considerable money was expended by it in drilling to determine the quality and quantity of coal under drainage, where it was expected the best coal would be found. No quality or quantity of coal was found by such test drilling; nor by the drilling of oil wells thereon, such as would justify the owners of the land to mine the coal thereunder. The greater portion of the veins of coal was discovered to

be very thin, with partings of slate. After making these investigations to determine the coal that could be mined with reasonable effort and skill, at a reasonable profit, at the time it conveyed the timber to the Dawkins Lumber Company, the Breathitt Coal & Timber Corporation offered to give the 13,000 acres to the Dawkins Lumber Company if it would accept it and agree to pay the taxes thereon, which the Dawkins Lumber Company declined. Engineers, geologists, and business men, who were familiar with the formation and topography of the land, and the efforts that had been made and the money that had been expended to ascertain the quality and quantity of the coal, oil, and gas thereunder, declared that the land was practically of no value for either of these products. No one having knowledge of the tests that had been made for coal, oil, and gas thereunder was introduced by the appellee, except one member of the board of supervisors, and he in fact had no opportunity to know the land sufficiently to acquire knowledge on which to base an estimate or value the quality or quantity of coal or gas or oil thereunder. Another member of the board, and others who resided in the vicinity of the land, testified in behalf of the appellees, but they merely stated their general impression in respect to the quality, quantity and value of the coal, oil, and minerals thereunder, based on their general knowledge of such products obtainable or produced on adjacent lands. One member of the board of supervisors imparted the information that the timber not sold or not removed from the land was such as was about 14 inches in diameter. The employees of the Breathitt Coal & Timber Corporation and the Dawkins Lumber Company positively stated that all of the timber on it was owned by the Dawkins Lumber Company by reason of the conveyance to it. On June 11, 1929, the Breathitt Coal & Timber Corporation sold and conveyed the surface of the 13,000 acres for the consideration of $6 per acre, to the Westova Gas Company, reserving the timber. Between July 1, 1929, and July 1, 1930, the Westova Gas Company sold and conveyed the land, reserving the oil, gas, and timber, at $6 per acre, to the Carbreath Gas Company. The board of supervisors, when assessing the 13,000 acres against the Westova Gas Company for taxation in 1929, fixed the coal thereunder at $7 per acre; the surface at $5 per acre, making $12 per acre. From this, it deducted $1.50 per acre for the oil and gas rights which were not owned by the

Westova Gas Company; thus assessing the land, including the coal thereunder, at $10.50 per acre. For the year 1930 it assessed against the Carbreath Gas Company coal on the 13,000 acres at $5 per acre; the surface, $5 per acre, and the timber, $1 per acre, making a total of $10 per acre for the 13,000 acres. From these assessments appeals were taken by both companies to the quarterly court (section 4128, Ky. Stats.). It approved the assessments. From its orders, appeals were taken (section 4128) to the circuit court, which approved the assessments and entered orders accordingly. From these orders these appeals are prosecuted.

Section 4052, Ky. Statutes, requires all property to be assessed each year as of the 1st day of July in the year listed. It is not necessary in this case to consider or determine the question of equality and uniformity as required by sections 171 and 172 of the Constitution of Kentucky. Section 4020, Ky. Statutes, requires "all real and personal estate within this state * * * of all corporations * * * be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale." Arbitrarily fixing the valuation for taxation of any property within the state by any method which results in assessing it for taxation in excess of its fair, cash value, "estimated at the price it would bring at a fair voluntary sale," is without the intendment and purpose of both the Statutes and the Constitution. Board of Supervisors of Estill County v. Superior Oil Corporation, 210 Ky. 539, 276 S. W. 527; Ky. River Coal Corporation v. Knott County (Ky.) 54 S. W. (2d) 377, decided November, 1932.

The sale or conveyance of this property on June 11, 1929, is not attacked or challenged. It is not even intimated that it was not in good faith, and that the price which the Westova Gas Company paid for the land was not at that time the fair, cash value, "estimated at the price it would bring at a fair voluntary sale." No fact or circumstance is presented by the evidence tending to show there was any change, increase, or fluctuation in the fair, cash value of the land between the date of the sale June 11, 1929, and the 1st day of July, 1929, the date fixed by the statute as the date of the assessment for that year. What we have stated in respect to the price paid per acre when it was sold by the Breathitt County Coal & Timber Corporation to the Westova Gas Company applies to the sale and convey-

8

ance by the Westova Gas Company to the Carbreath Gas Company at the $6 per acre, the purchase price paid and received under this sale. There was no showing that there was more coal under the land or that the conditions, or its fair cash value, had changed since June 11, 1929, and before it was sold and conveyed to the Carbreath Gas Company. These facts, coupled with the other evidence, indubitably prove that the board of supervisors assessed against each company the surface and coal thereunder in excess of the fair cash value of the land, and coal, "estimated at a price it would bring at a fair voluntary sale." It is clearly and sufficiently shown that there was no mineable, marketable coal under the 13,000 acres at the time the board of supervisors assessed, for each of the years, the property for taxation. In fact, it is shown the companies listed for taxation the surface of the land, including the coal thereunder, in excess of its fair market value when they respectively assessed it for taxation, and that they did so in view of the taxing value usually imposed by the board of supervisors on the real estate situated in that county. Without extending this opinion, the reader is referred to Ky. River Coal Corporation v. Knott County (Ky.) 54 S. W. (2d) 377, involving the action of the board of supervisors of the same county for the years 1929 and 1930, of other mineral lands assessed for taxation, for an elaborate consideration of the questions presented in these cases. The evidence very clearly demonstrates that the Westova Gas Company and the Carbreath Gas Company respectively listed the land, including the coal thereunder, and timber, if any, was not reserved, at the fair cash value thereof, within the contemplation of both the Statutes and Constitution, and that the circuit court erroneously decreed the contrary.

Judgment reversed for proceedings consistent with this opinion.